2001-NMCA-041

27 P.3d 1002

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Quan NGO, Defendant,**

**and**

**Robert Johnstone, Esq., Real Party in Interest–Appellant.**

No. 21,263.

Court of Appeals of New Mexico.

May 16, 2001.

Patricia A. Madrid, Attorney General, Steve Suttle, Ass't Attorney General, Santa Fe, NM, for Appellee.

David Henderson, Santa Fe, NM, for Appellant.

## OPINION

BUSTAMANTE, Judge.

{1} This case came before us in an unusual procedural posture and involves the law of criminal contempt and the punishment that may be imposed on an attorney by the trial court for contemptuous conduct. Defense counsel filed a direct appeal from the sanctions order and subsequently filed a petition for a writ of error, which this Court granted. We consolidated the appeals, but now quash the order granting the writ of error and proceed to address the issues raised under the direct appeal. We affirm the sanctions

order in part, reverse it in part, and remand for proceedings consistent with this opinion.

## BACKGROUND AND FACTS

{2} Briefly stated, the facts are as follows. In the context of a criminal trial in which the defendant was accused of assault upon a jail guard, the trial court first sanctioned defense counsel for failing to disclose a witness and then later for disobeying an evidentiary ruling during cross-examination of a corrections officer. The latter events led the trial court to declare a mistrial. The court entered an order declaring a mistrial on January 26, 2000, and an order for sanctions on February 7, 2000. The order for sanctions required defense counsel to pay the sanctions in full within thirty days of the entry of the order or be suspended from practicing in the Fifth Judicial District. On February 22, 2000, the court entered an order suspending defense counsel from practice in the Fifth Judicial District.

{3} On February 18, 2000, defense counsel filed a notice of appeal from the order for a mistrial and the order for sanctions. Defense counsel also filed a petition for a writ of prohibition and/or superintending control with the New Mexico Supreme Court, which was denied. Upon the filing of the writ of prohibition, the trial court stayed the orders for sanctions and suspension and then reimposed them when the writ was denied. Defense counsel filed a petition for a writ of error with this Court on April 24, 2000, appealing the reimposition of those orders.

{4} Defense counsel raised four issues in his docketing statement in the direct appeal. Two of those issues addressed the trial court's rulings declaring a mistrial and the denial of a pre-trial motion to dismiss, and the other two addressed the order for sanctions. Defense counsel raised an additional three issues in the petition for writ of error relating to the reimposition of the orders for sanctions and of suspension. The direct appeal and the petition for writ of error were opened as two separate files in this Court. Noting the two files were related, this Court, as a housekeeping matter, told the parties it would address the collateral issues relating to sanctions and suspension under the case number assigned to the writ of error. This Court then dismissed the portion of the direct appeal pertaining to the issues arising from the underlying criminal trial, as there was no final order in that case.

## DISCUSSION

{5} Five issues are before this Court on appeal: (1) whether the issues are properly before this Court on the writ of error or on direct appeal, (2) whether defense counsel's failure to list a witness was inadvertent and whether the trial court erred in sanctioning him in the manner it did, (3) whether defense counsel's questioning of a witness willfully violated the court's evidentiary ruling and whether the trial court erred in sanctioning him and threatening to suspend counsel from practicing before the Fifth Judicial District, (4) whether the trial court erred in sanctioning defense counsel for violating its evidentiary ruling and threatening to suspend him without a hearing, and (5) whether the trial court erred in suspending defense counsel from the practice of law.

### Jurisdiction

{6} Defense counsel argues that the issues raised are properly before this Court both on direct appeal and as set forth in the petition for a writ of error. The State responds that defense counsel abandoned his direct appeal and that the petition is both time-barred and an inappropriate means of appeal in this case

{7} Rule 12–503(E)(2) NMRA 2001 states that a petitioner for a writ of error must demonstrate that the order appealed from "(a) conclusively determines the disputed question; (b) resolves an important issue completely separate from the merits of the action; and (c) would be effectively unreviewable on appeal from a final judgment because the remedy by way of appeal would be inadequate." Defense counsel argues that a writ of error is necessary in this case to appeal from the order reimposing sanctions because the reimposition of sanctions "was not and likely could not be raised in the docketing statement." He argues, therefore, that the order is therefore "effectively unreviewable on appeal." *Carrillo v. Rostro*, 114 N.M. 607, 613, 845 P.2d 130, 136 (1992). The State counters, and we agree, that the original

order for sanctions, which was in part a contempt order and in part similar to a contempt order, and the order for suspension were both final and appealable when entered. *See Purpura v. Purpura*, 115 N.M. 80, 81, 847 P.2d 314, 315 (Ct.App.1993) (addressing an appeal from an order holding attorney in direct criminal contempt entered during a civil case). Accordingly, the issues raised in this case were not unreviewable on appeal from the final orders entered. Therefore, we now quash the order granting the petition for a writ of error as improvidently granted and do not reach the question of whether the petition was time-barred.

{8} The State also argues, however, that defense counsel abandoned his direct appeal from the order of suspension when he did not respond to this Court's notice proposing to summarily dismiss the appeal filed in the underlying criminal case. Our calendar notice proposing to dismiss the appeal in the criminal case stated that the docketing statement filed in that case "rais[ed] issues concerning the merits of Defendant's case and collateral issues concerning the trial court's sanctioning of Defendant's attorney." We then stated that the issues concerning sanctions would be addressed in our calendar notice responding to the petition for a writ of error which had been filed by then and which also addressed the sanctions. Similarly, in our first calendar notice responding to the petition, this Court stated that the issues concerning sanctions raised in the docketing statement filed in the criminal case would be addressed in the case responding to the petition. Thus all parties were notified of this procedure, and we will not penalize defense counsel for not opposing summary dismissal of the direct appeal when our actions encouraged him to act as he did, especially when the State received notice of the appeal and our subsequent actions.

{9} The notice of appeal filed in the underlying criminal case stated that it was appealing both the order declaring a mistrial and the order for sanctions, both of which were attached to the notice as exhibits. The State received notice of that appeal. Although Rule 12–202(B)(1) NMRA 2001 requires the notice of appeal to contain the name of each party taking the appeal, and in this case the caption on the notice did not state that defense counsel was an appellant, it was clear from the order for sanctions that defense counsel, and not the defendant, was appealing that order. Under those circumstances, a technical defect in the notice will not deprive this Court of jurisdiction. *See Mitchell v. Dona Ana Savs. & Loan Ass'n*, 111 N.M. 257, 258, 804 P.2d 1076, 1077 (1991) (holding an attorney's failure to prosecute a sanctions order in his own name would not deprive appellate court of jurisdiction when it was clear that attorney, and not client, was prosecuting the appeal); *see also Martinez v. Martinez*, 101 N.M. 493, 495, 684 P.2d 1158, 1160 (Ct.App.1984) (stating notice of appeal placed jurisdiction in Court of Appeals despite technical defect when opposing party had notice). We will, therefore, entertain the issues raised in this appeal arising from the order for sanctions entered on February 7, 2000.

**The First Sanction**

{10} Defense counsel argues that the trial court erred when it did not provide him with a hearing before it sanctioned him by fining him $250 for failing to disclose a witness. When a defendant fails to include a witness he or she intends to call at trial, "the district court may, in its discretion, resort to several sanctions, including granting a continuance, prohibiting the party from calling a witness not disclosed, or entering such other order as it deems appropriate under the circumstances." *State v. Martinez*, 1998 NMCA 022, ¶ 6, 124 N.M. 721, 954 P.2d 1198; *see also* Rule 5–505(B) NMRA 2001. Whether defense counsel was afforded procedural due process is a question of law that we review de novo. *State v. Palmer*, 1998 NMCA 052, ¶ 4, 125 N.M. 86, 957 P.2d 71.

{11} In this case, defense counsel's failure to disclose a witness was revealed at a pretrial conference in chambers. When the trial court proposed that the prosecutor interview the undisclosed witness, the State objected and asked for sanctions. The prosecutor argued that, unless courts were willing to sanction attorneys for late disclosures, trials would frequently be conducted by am-

bush. The trial court indicated that it had sanctioned attorneys in the past, although perhaps not this particular defense counsel. The trial court then turned to defense counsel and asked defense counsel to explain why he had not disclosed the witness. Defense counsel told the court that he did not know why, that he supposed it was something he had overlooked, and that he had known about the witness since the case started. After hearing this explanation, the trial court ruled that because counsel had known about the witness for that long and did not disclose it, the court would sanction counsel $250 to be paid to the district court clerk. There was a pause, following which the trial court said that if there was nothing else, the trial would be started.

{12} Although the State objected to the defense witness, the court refused to exclude the witness, a sanction our Supreme Court has suggested is only appropriate in limited circumstances when the trial court has considered the following factors: "(1) the effectiveness of less severe sanctions, (2) the impact of preclusion on the evidence at trial and the outcome of the case, (3) the extent of prosecutorial surprise or prejudice, and (4) whether the violation was willful." *McCarty v. State*, 107 N.M. 651, 653, 763 P.2d 360, 362 (1988). In this case, there was no indication that defense counsel's violation was willful, and the court allowed the State time to interview the undisclosed witness, but observed there was no excuse for defense counsel's failure. Exercising its discretion, the court fashioned a sanction it thought appropriate that would not prejudice Defendant or the State, and which would "enforce the rule to preserve the integrity of the trial process." *Id.* at 655, 763 P.2d at 364.

■ {13} As the State points out, defense counsel was provided with notice that the State was seeking sanctions and that the trial court was contemplating granting the State's request and with a hearing during which defense counsel had an opportunity to explain why he did not disclose his witness and an opportunity to object to sanctions being awarded. In contrast to *State v. Diamond*, 94 N.M. 118, 119–20, 607 P.2d 656, 657–58 (Ct.App.1980), this defense counsel was be-

fore the court and afforded notice that sanctions were being sought as well as an opportunity to speak to the issues. The procedure utilized, though brief, appears to satisfy the due process balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 334–335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (noted in *State v. Woodruff*, 1997 NMSC 061, ¶ 27 n. 5, 124 N.M. 388, 951 P.2d 605, as having been found by the United States Supreme Court to be useful in the context of criminal proceedings). Under that test, the nature of the private interest, the risk of erroneous deprivation and probable value of additional safeguards, and the government's interest, including administrative and fiscal burdens, are balanced to determine how much process is due. *Woodruff*, 1997 NMSC 061, ¶ 27, 124 N.M. 388, 951 P.2d 605. As the State argues, it was clear from the process defense counsel was afforded that he knew of his duty to disclose his witness and that he was allowed to explain why he had failed in this duty, and no additional process would have changed that.

■ {14} Defense counsel argues that he should not have been sanctioned because his conduct did not satisfy the requirements for being held in criminal contempt. However, in our view, counsel was not held in contempt, but was simply sanctioned for violating a rule of criminal procedure by the imposition of a modest fine of $250. Consequently, his conduct did not have to satisfy the requirements for criminal contempt, and he was not entitled to the level of due process required by the rules of criminal procedure for a finding of contempt. *Compare Dona Ana Savs. & Loan Ass'n v. Mitchell*, 113 N.M. 576, 578–79, 829 P.2d 655, 657–58 (Ct.App.1991) (stating, in the context of affirming a $250 fine, "[p]olicy considerations and fundamental differences between a monetary sanction for a Rule 11 violation and an infraction for criminal contempt mandate against following criminal contempt procedures for Rule 11 violations" and relying on the *Mathews* due process balancing test) *with Lindsey v. Martinez*, 90 N.M. 737, 739, 568 P.2d 263, 265 (Ct. App.1977) (stating that criminal contempt proceedings are governed by the rules of

criminal procedure). Accordingly, we hold that defense counsel was afforded adequate process and affirm the trial court's sanction of him for failing to disclose a witness.

{15} The dissent's suggestion that the $250 fine was significant enough to require a full-blown hearing with the attorney represented by counsel and able to call witnesses appears to us to be excessive. It also appears to run counter to those cases suggesting fines as lesser sanctions for attorney conduct that could impact the client's case. If trial courts were required to conduct full trials on every potential sanction of an attorney, they could well prefer a sanction, such as witness exclusion, which would impact the truth-seeking process. Under these circumstances, and because there was notice and an opportunity to be heard in this case, due process was satisfied.

### The Second Sanction

{16} Defense counsel next argues that the trial court abused its discretion in sanctioning him for his conduct during his cross-examination of the State's witness by charging the costs of the jury and the State's witnesses to defense counsel without notice and an opportunity to be heard. Both parties appear to acknowledge that the trial court effectively found the attorney in direct criminal contempt of an evidentiary ruling. An attorney may be held in direct contempt and sanctioned for disobeying a court order in court. *See In re Klecan*, 93 N.M. 637, 639, 603 P.2d 1094, 1096 (1979). When contempt is direct, the court may punish in a summary proceeding. *See In re Cherryhomes*, 103 N.M. 771, 774, 714 P.2d 188, 191 (Ct.App. 1985). However "except in cases of flagrant contemptuous conduct, before summary punishment for contempt may be imposed and enforced, the record should be clear that: (1) a specific warning was given by the judge; (2) an opportunity to explain was afforded, and (3) a hearing was held." *In re Klecan*, 93 N.M. at 640, 603 P.2d at 1097. In *In re Klecan*, our Supreme Court stressed that a warning to an attorney not to proceed with a particular line of question must be made clear. *See id.* at 639, 603 P.2d at 1096. In that case, an attorney read an interrogatory

to a witness, after asking the court if he could read the question, and was told, "Not if you are offering the exhibit. If you are going to ask her a question, fine, but for offering the exhibit, I can read the question." *Id.* at 638, 603 P.2d at 1095. Our Supreme Court ruled that the trial court's warning to the attorney was not clear or specific enough to warrant a finding of contempt. *Id.* at 639, 603 P.2d at 1096.

{17} In this case, the alleged contemptuous conduct occurred during the defense's cross-examination of the State's primary witness, a former corrections officer at Lea County Correctional Facility. Defense counsel attempted to impeach the witness's credibility by asking him about a three-day suspension he had received in February 1999. The witness stated that he could not recall having been suspended then, and defense counsel asked if he could refresh the witness's recollection with a document. The prosecutor asked to see the document and then asked to approach the bench, where she objected that defense counsel was seeking to solicit irrelevant evidence about a prior bad act. The prosecutor argued that the document was extrinsic evidence that could not be admitted.

{18} After reviewing the evidentiary rule, the court instructed defense counsel: "Okay, you can ask him about it, but you can't get that admitted because it's extrinsic evidence." The prosecutor continued to argue that reading from the document or anything to do with it would constitute extrinsic evidence, but the court said to defense counsel, "You asked him about whether he was suspended or not and-er-why don't you ask him about that?" The prosecutor repeated that this was extrinsic evidence, and the court repeated, "That's extrinsic evidence, so you can't use it." When defense counsel continued his cross-examination of the witness, he stated: "My question is this: were you suspended for three days for disciplinary reasons for abuse of a prisoner?"

{19} The prosecutor objected that defense counsel was reading from the document that had been ruled to be extrinsic evidence, and the court sustained the objection. The prosecutor then stated that if this happened one more time she would ask for a mistrial. The

court, however, did not instruct defense counsel to move on or warn him that he should cease this line of questioning, but stated only that he should reframe the question. Defense counsel then asked the witness about the suspension and the reason for it, and asked if "there was a little physical pushing involved?" The prosecutor objected that defense counsel was reading from the document, and the trial court sustained the objection. The prosecutor then moved for a mistrial. The court stated, "Granted. You've got it." The prosecutor then asked for sanctions, and the court stated, "You've got that." Defense counsel attempted to speak, but the court stopped him, telling him that the court had already ruled.

{20} Although the State argues that defense counsel's conduct "stands in stark contrast to what occurred in [*In re] Klecan*," in our view, the trial court's ruling, as in *In re Klecan*, was not made sufficiently clear to the attorney to justify holding him in contempt. While the prosecutor argued to the court that the document, reading from the document, and anything to do with it constituted extrinsic evidence, the trial court did not make such a ruling. Moreover, although the prosecutor stated that she would ask for a mistrial if defense counsel continued with his line of questioning, the trial court did not warn defense counsel that he would be held in contempt if he persisted, but instead instructed him to reframe his question.

{21} After reviewing the taped transcript of the trial, we are not persuaded by the State's argument that defense counsel's conduct was flagrantly contemptuous. Neither are we persuaded that it required the court to "act instantly to suppress disturbance or violence or physical obstruction or disrespect to the court." *In re Klecan*, 93 N.M. at 640, 603 P.2d at 1097 (internal quotations and citations omitted). Accordingly, we hold that, based on the record on appeal, the requirements to hold defense counsel in direct criminal contempt were not met, and we reverse on this issue.

**Suspension**

{22} In its order for sanctions, the trial court ordered that the sanctions imposed upon defense counsel were to be "paid in full within thirty (30) days from the entry of this Order or Robert Johnstone's privilege to practice in the Courts of the Fifth Judicial District shall be suspended in addition to other and further sanctions which the Court may impose." Defense counsel argues that under Rule 17–102 NMRA 2001, only the New Mexico Supreme Court has the power to admit or suspend attorneys from the practice of law and that the trial court went beyond the imposition of a contempt sanction and interfered with the jurisdiction of the Supreme Court when it threatened to suspend defense counsel from practicing before the Fifth Judicial District. Defense counsel acknowledges, however, that under Rule 17–201, in defining its exclusive disciplinary jurisdiction, the Supreme Court states: "Nothing herein contained shall be construed to deny to any other court such powers as are necessary for that court to maintain control over proceedings conducted before it, such as the power of contempt, nor to prohibit local bar associations from censuring, suspending or expelling their members in their associations." The State responds that although it agrees that from membership in general a district court judge has no authority to suspend or disbar an attorney from the practice of law, in this case he was suspended from only one jurisdiction when he did not comply with an earlier order for sanctions.

{23} The exercise of the court's inherent contempt power "has always been regarded as a necessary incident and attribute of courts" because it is "essential to the preservation of order in judicial proceedings." *State v. Powers*, 1998 NMCA 133, ¶ 24, 126 N.M. 114, 967 P.2d 454 (internal quotations and citations omitted). In *State ex rel. Wood v. Raynolds*, 22 N.M. 1, 4–5, 158 P. 413, 414 (1916), our Supreme Court stated that "each court of superior and general jurisdiction possesses the power to disbar or suspend an attorney as a necessary incident to its organization." In that case, our Supreme Court held that "the district court had the power to suspend the relator from practicing law in the courts of the Second judicial district" temporarily, but the question of whether an attorney should be permanently disbarred from practice was to be decided by the Supreme Court. *Id.* at 11, 158 P. at 415.

{24} Although this holding appears to uphold a district court's power to suspend an

attorney from practicing in all the courts of an entire district, in 1916, the Second Judicial District had only one district judge. *See* 22 N.M. at [xiv] (listing the district court judges in New Mexico for the years 1916–17). Until Article VI, Section 12 of the New Mexico Constitution was amended in 1988, that Section stated: "The state shall be divided into eight judicial districts and a judge shall be chosen for each district." Additionally, at that time, Bernalillo, McKinley, and Sandoval counties comprised the Second Judicial District; thus, it appears that one district court judge had authority over more than one courtroom.

{25} We recognize that a judge in a multi-division district acts for the same court. *See State v. Peters,* 69 N.M. 302, 304, 366 P.2d 148, 149 (1961) (recognizing that a void sentence may be vacated by a judge of another division in the district because it is an action of the same court). However, because each judge has inherent power to control his or her own courtroom, then it follows that when judges of the same judicial district hold coordinate positions, one judge cannot infringe on another judge's power to control his or her own courtroom. *See Sims v. Ryan,* 1998 NMSC 019, ¶ 6, 125 N.M. 357, 961 P.2d 782 (stating a presiding judge may not infringe on another district judge's inherent power). *Cf. Miller v. City of Albuquerque,* 88 N.M. 324, 327–28, 540 P.2d 254, 257–58, (Ct.App.1975) (stating that although a judge of concurrent jurisdiction may enter subsequent interlocutory orders in a case in which another judge had entered orders, one judge's actions cannot infringe upon the power of the second judge to act). Only the Supreme Court through its power of superintending control over all inferior courts can control the practices and procedures of those courts. *See Dist. Ct. of the Second Judicial Dist. v. McKenna,* 118 N.M. 402, 405, 881 P.2d 1387, 1390 (1994). Accordingly, we hold that although the district judge in this case had the power to suspend defense counsel from his own courtroom, he exceeded his authority and infringed upon the power of other judges in the district when he suspended him from the entire Fifth Judicial District.

{26} In *Raynolds,* the Court made clear that a suspension requires a separate hearing

so that the attorney can "defend the charge relating to his misconduct" and should not be treated as incidental to the other misconduct. *Id.* at 14, 158 P. at 418. We note that in this case the order for sanctions stated that defense counsel would be suspended from practicing before the Fifth Judicial District if he did not pay the sanctions in full within thirty days of the entry of the order. That order was entered on February 7, 2000. Thus defense counsel had until March 9, 2000, to pay the fine. However, the court entered an order of suspension prematurely on February 22, 2000. Such an error emphasizes why a separate hearing is required before suspending an attorney from practice.

{27} We hold, therefore, that while it was within the trial judge's inherent power to temporarily suspend the attorney from practice before him, his power did not permit him to encroach upon the inherent power of other trial judges in the Fifth Judicial District by suspending the attorney from practice before them. Moreover, before suspending the attorney, the court was required to hold a separate hearing to give the attorney the opportunity to defend himself. Thus, the trial court erred in suspending defense counsel from practicing before the Fifth Judicial District without holding a hearing on whether the suspension was warranted.

## CONCLUSION

{28} We affirm the trial court's sanction of defense counsel for failing to disclose a witness. We reverse the trial court's sanction of defense counsel requiring him to pay for the jury and transporting the State's witnesses. We also hold that it was error to suspend defense counsel without a hearing and that it was not within the trial court's authority to suspend defense counsel from practicing before the entire Fifth Judicial District.

{29} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD, Judge, IRA ROBINSON, Judge.

ROBINSON, Judge (concurring in part and dissenting in part).

{30} I agree with the majority's reversal on sanctions two and three, but I respectfully

dissent from the majority's affirmance on the first sanction. Our cases routinely allow an attorney notice and a meaningful opportunity to respond. I disagree with the majority's holding that the first sanction involves merely a rules violation and that sanctions can be imposed summarily. The case relied on by the majority for this proposition is *Dona Ana Savs. & Loan v. Mitchell*, 113 N.M. at 578, 829 P.2d at 657. But that case involves a sanction under Rule 11, and deals with pleadings filed in bad faith, which is not the situation here. Assuming that failure to disclose a witness is analogous to filing a pleading in bad faith under Rule 11, even under *Dona Ana Savs. & Loan*, the attorney was issued an order to show cause and given a meaningful opportunity to respond. *Id.* at 579, 829 P.2d at 658. *Dona Ana Savs. & Loan* is in accordance with other New Mexico cases that consistently express the requirement of a show cause order, and allow the attorney to prepare and present a defense. *See In re Avallone*, 91 N.M. 777, 778, 581 P.2d 870, 871 (1978) (where attorney failed to follow appellate court rules and requirements, court held the attorney in contempt after an order to show cause and a hearing); *Diamond*, 94 N.M. at 121, 607 P.2d at 659 (attorney who did not report in as required was entitled to be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, to be represented by counsel, and to call witnesses, and could not be punished summarily); *In re Klecan*, 93 N.M. at 639, 603 P.2d at 1096 (summary contempt inappropriate where the attorney did not have prior warning, an opportunity to explain, and a hearing). The majority has not cited, and I have not found, a New Mexico case that allows a court to impose a significant fine on an attorney without issuing an order to show cause.

{31} I do not condone defense counsel's failure to comply with his discovery obligations. However, a significant sanction should not be summarily imposed without giving the attorney adequate process, *In re Avallone; Diamond*, or, unless the attorney has engaged in serious misconduct in the presence of the court, *In re Klecan*. I cannot agree that confronting an attorney with a rule violation and then demanding an immediate response provides a "reasonable opportunity to meet [the charge] by way of defense or explanation." *Diamond*, 94 N.M. at 121, 607 P.2d at 659 (internal quotations and citations omitted). There is no opportunity for the attorney to obtain his own counsel, and no opportunity to call witnesses, if the attorney or his counsel chooses to do so. Having heard the attorney's brief explanation that he forgot to list the witness, the proper procedure would have been for the court to issue an order to show cause. That would have ensured that the attorney received the process due under *Diamond, In re Avallone*, and even under *Dona Ana Savs. & Loan*.

{32} The majority concludes that the process was sufficient because more process would not have changed anything, since defense counsel admitted he forgot to list the witness. I disagree. It is unfair to deny someone notice and a meaningful opportunity to prepare a defense, by concluding that the defense would have been the same. If the attorney had received due process, he would have had a fair opportunity to reflect upon and explain why he failed to list the witness. Perhaps his trial schedule had been heavy, or given time to explain after reflection, he may have remembered some detail about his failure that would have made him less blameworthy. While his failure may not have been excused, perhaps an explanation or defense would have resulted in a lesser sanction. But defense counsel was never given the opportunity to prepare a defense, to reflect on and explain the reasons for his failure, or to present anything else that may have resulted in a reduced fine, or no fine at all. Our cases consistently recognize this right, holding that due process requires that an attorney accused of misconduct be issued an order to show cause and an opportunity to respond at a later date.

{33} The majority concludes that little process is due because this is a rules violation, and the $250 fine is modest. I disagree. I consider the fine to be significant. If this is to be treated as merely a rules violation, which the majority asserts allows a court to summarily sanction an attorney, then the fine should be commensurate with a rules violation and the recognition that the attorney has received virtually no process. The fine here

is significant and it is unfair to impose it without sufficient process.

{34} Encouraged by the prosecutor, the court fined defense counsel $250 without giving him adequate process, fined him again after calling a mistrial when there may not have been a need to do so, and prohibited him from practicing law not just in his own court, but in all the courts of the Fifth Judicial District. Given the pattern of sanctions in this case, I am unwilling to conclude that the scant process used to impose the $250 fine is sufficient.

{35} Because I find the demand for an immediate explanation and the instantaneous imposition of a $250 fine to be an inadequate measure of due process, I respectfully dissent.