IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2012-NMCA-060

Filing Date: April 26, 2012

Docket No. 30,405

GENE N. CHAVEZ,

      Plaintiff/Petitioner-Appellee,

v.

STATE OF NEW MEXICO WORKERS'
COMPENSATION ADMINISTRATION,

      Defendant/Respondent-Appellant.

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Beatrice Brickhouse, District Judge

Chavez Law Offices, P.A.
Gene N. Chavez
Albuquerque, NM

Pro Se Appellee

Keleher & McLeod, P.A.
Sean Olivas
Albuquerque, NM

for Appellant

OPINION

VIGIL, Judge.

{1}    This case presents us with an issue of first impression:  whether the Workers' Compensation Administration (WCA) has authority to suspend an attorney from practicing before it.  We conclude that the WCA has such authority.  This authority arises out of the power of the WCA to control the proceedings before it, and an attorney who violates its rules of practice and procedure may properly be sanctioned by the WCA.  Furthermore, the power to suspend the attorney is separate and apart from, and does not infringe upon, the Supreme

Court's exclusive authority to discipline attorneys. The district court having concluded otherwise, we reverse in part, and affirm in part.

## I.    BACKGROUND

**{2}**    This case commenced when the Director of the WCA filed a pleading in the WCA entitled, "In the Matter of Enforcement of the Workers' Compensation Act With Respect to: Gene Chavez, Esq." Chavez is an attorney who practices before the WCA, and the Director proposed that Chavez be assessed administrative penalties for seventeen (17) separate violations of the Workers' Compensation Act (the Act), NMSA 1978, §§ 52-1-1 to -70 (1929, as amended through 2007), and Rules. Specifically, the Director alleged that Chavez willfully refused to participate in the mediation process in three (3) different instances; that Chavez willfully disregarded the rights of the parties in eight (8) different instances; that Chavez advocated meritless claims in four (4) separate instances; and that Chavez behaved in a non-courteous and disrespectful manner in two (2) separate instances, all in violation of applicable Rules of the WCA. The Director proposed assessing a penalty of seventeen thousand dollars ($17,000), and a three (3) month suspension of the right to practice before the WCA. *See* § 52-1-61 (authorizing a $1000 fine for each violation of the Act or any rule or regulation adopted pursuant to the Act); 11.4.3.13(B) NMAC (11/30/2004) (authorizing the WCA to suspend an attorney for engaging in or advocating meritless claims or defenses before the WCA).

**{3}**    Chavez hired counsel, and the parties ultimately entered into a Settlement Agreement. Pursuant to the Settlement Agreement, Chavez agreed to: (1) engage in professional conduct and adhere to the Rules of Professional Conduct and the Act and Rules; (2) successfully complete a three-month monitoring period by retired District Judge Diane Dal Santo who would act as an independent observer or monitor to evaluate and/or investigate any complaints against Chavez for any conduct prohibited by the Act or Rules; (3) complete a professionalism course approved by the New Mexico State Bar in addition to the usual professionalism credit that is already required; (4) pay an administrative assessment of $2,750 to the WCA; and (5) voluntarily refrain from handling workers' compensation cases for thirty (30) days.

**{4}**    Chavez further agreed "if any of the terms set forth above are not completed that the WCA has the right to file that certain Stipulated Order executed contemporaneously with this Settlement Agreement and incorporated herein." The Stipulated Order recites that the WCA and Director have personal and subject matter jurisdiction; that a material breach of the Settlement Agreement has occurred; and that Chavez does not dispute the allegations contained in the Director's initial filing alleging seventeen (17) separate violations of the Act and Rules. The Stipulated Order then orders that Chavez is "suspended from the practice of workers' cases, which includes appearing/attending mediations, hearings, trials, etc., or generating any fees associated with workers' compensation matters, which will become effective and begin on the date of the filing of this Order."

**{5}** Chavez entered into a Professional Services Agreement with Judge Dal Santo, agreeing that she would monitor his professional conduct before the WCA for a period of three months. During the observation period, three complaints were filed against Chavez with the WCA, and the WCA forwarded them to Judge Dal Santo. After investigating the complaints, Judge Dal Santo submitted two reports to the WCA setting forth her conclusions that Chavez had committed numerous violations of the Rules of Professional Conduct. The violations included making false statements to a tribunal, failing to allow a client to make the decision regarding settlement, failing to communicate with clients, failing to give notice to a client he was withdrawing, and failing to return the client's papers to him. Upon its receipt of Judge Dal Santo's reports, the WCA filed the Stipulated Order suspending Chavez from practicing before the WCA.

**{6}** Chavez filed a petition for writ of certiorari and petition for stay in the district court. The district court ultimately determined that the WCA did not have authority to suspend Chavez and ordered that the Stipulated Order be reversed on grounds that the Settlement Agreement was ultra vires and void ab initio. The WCA appeals.

## III. ANALYSIS

**{7}** The WCA presents two arguments on appeal. First, the WCA asserts that the district court erred in denying its motion to dismiss when Chavez failed to file a statement of review issues as required by Rule 1-075(J) NMRA. Secondly, the WCA contends that the district court erred in concluding that the Settlement Agreement is void on the grounds that the WCA did not have authority to suspend Chavez from practicing before the agency. We address each argument in turn.

### A. WCA's Motion to Dismiss Chavez's Appeal

**{8}** No statutory right is provided to review the WCA order in this case. Accordingly, Rule 1-075 governed the proceedings in the district court. Rule 1-075(A) ("This rule governs writs of certiorari to administrative officers and agencies pursuant to the New Mexico Constitution when there is no statutory right to an appeal or other statutory right of review.").

**{9}** Chavez failed to file a "statement of review issues" in the district court as required by Rule 1-075(J), which states that a statement of review issues "shall be filed with the district court." The WCA therefore filed a motion to dismiss Chavez's appeal, and the district court denied the motion. Our review of this ruling is limited to whether the district court abused its discretion. *See* Rule 1-075(W)(1), (4) (stating that the failure to file a statement of review issues "may be deemed sufficient grounds for dismissal of the appeal by the district court" and further providing that for any failure to comply with the rules, the district court may "take such action as it deems appropriate").

3

**{10}** The district court reasoned that dismissal of the appeal was not warranted because "[Chavez] complied with the substance of Rule 1-075[, and b]oth parties sufficiently briefed the issues in this matter when the Petition for Writ of Certiorari and Request for Stay were filed." The court also noted that "[t]he parties' briefing amply addressed the relevant issues and therefore, Petitioner's failure to file 'Statement of Review Issues' is not a material breach mandating dismissal." Thus, although Chavez failed to file a "statement of review issues" as required, we cannot conclude that the district court abused its discretion in denying the WCA's motion to dismiss under these circumstances. *See Sims v. Sims*, 1996-NMSC-078, ¶ 65, 122 N.M. 618, 930 P.2d 153 ("An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case.").

**B.     Authority of the WCA to Suspend Chavez From Practicing Before the Agency**

**{11}** The district court ruled that the Settlement Agreement entered by the WCA and Chavez is void because the WCA had neither inherent, nor statutory authority to suspend an attorney from its court. The court reasoned that because the Supreme Court has exclusive authority to impose discipline on practicing attorneys in New Mexico, the WCA has no inherent authority to enter into a Settlement Agreement to suspend an attorney from practicing before the WCA. Further, the district court concluded that in suspending Chavez, the WCA exceeded the statutory authority granted to it by the Legislature. Finally, the district court declared that the terms of the Settlement Agreement do not comply with existing case law granting courts inherent power to suspend attorneys and that the Settlement Agreement was filed without granting him an opportunity to be heard, and without notice to him, in violation of his right to due process of law. Our review of these statutory and constitutional issues is de novo. *See State ex rel. Jud. Standards Comm'n v. Espinosa*, 2003-NMSC-017, ¶ 5, 134 N.M. 59, 73 P.3d 197.

**1.     Inherent Authority and the Supreme Court's Exclusive Authority to Discipline Attorneys**

**{12}** The Supreme Court has exclusive jurisdiction to discipline attorneys in New Mexico. *See In re Treinen*, 2006-NMSC-013, ¶ 6, 139 N.M. 318, 131 P.3d 1282 (noting that the Supreme Court "has the sole authority to direct what constitutes grounds for the discipline of lawyers"); *In re Patton*, 86 N.M. 52, 54, 519 P.2d 288, 290 (1974) (stating that the power of suspension or disbarment of an attorney is a judicial power to be ultimately exercised by the Supreme Court), *abrogated on other grounds by In re Bristol*, 2006-NMSC-041, 140 N.M. 317, 142 P.3d 905. Rule 17-201 NMRA codifies the Supreme Court's exclusive jurisdiction in providing that every attorney who practices law in New Mexico "is subject to the exclusive disciplinary jurisdiction of the Supreme Court." This authority emanates from the New Mexico Constitution, Article VI, Section 3, which grants the Supreme Court "superintending control over all inferior courts," which includes the inherent power to regulate all pleading, practice, and procedure affecting the judicial branch. *In re Treinen*,

4

2006-NMSC-013, ¶ 6 (internal quotation marks and citation omitted).  The district court ruled that the WCA had no inherent authority to enter into the Settlement Agreement with Chavez, because by doing so, it infringed upon the exclusive jurisdiction of the Supreme Court to discipline attorneys.  We disagree.

**{13}**     While Rule 17-201 explicitly states that the Supreme Court has "exclusive disciplinary jurisdiction" over all attorneys practicing law in New Mexico, the rule also provides, in pertinent part, "Nothing herein contained shall be construed to deny any other court such powers as are necessary for that court to maintain control over proceedings conducted before it[.]"  As such, we have specifically held that a district court judge has authority to suspend an attorney from practicing in the judge's own courtroom. *State v. Ngo*, 2001-NMCA-041, ¶ 25, 130 N.M. 515, 27 P.3d 1002 (holding that the district court judge "had the power to suspend defense counsel from his own courtroom"); *see In re Byrnes*, 2002-NMCA-102, ¶ 23, 132 N.M. 718, 54 P.3d 996 ("We read *Ngo* as recognizing the authority of trial courts, albeit limited, to take disciplinary action against an attorney who appears before them as a means to control the proceedings in their courtrooms."); *In re Jade G.*, 2001-NMCA-058, ¶ 27-28, 130 N.M. 687, 30 P.3d 376 ("[E]ven though specific judicial authority is not delineated by statute, or stated in a rule of court, a court may exercise authority that is essential to the court's fulfilling its judicial functions.  This authority embraces the ability of a court to control its docket and the proceedings before it. . . .  Under its inherent authority, a court may sanction parties and attorneys to ensure compliance with the proceedings of the court.").

**{14}**     Without question, suspension by a trial judge and suspension by the Supreme Court are both disciplinary in nature. *See In re Byrnes*, 2002-NMCA-102, ¶ 23 ("Just as a Supreme Court suspension is disciplinary in nature, a trial court's suspension is disciplinary in nature.").  However, there is a material distinction on the effect of the discipline.  Discipline by the Supreme Court affects the attorney's status in all courts of the State of New Mexico. Rule 17-212(C) NMRA (providing that a disbarred or suspended attorney "shall not accept any new retainer or engage as attorney for another in any new case or legal matter of any nature").  On the other hand, suspension by a district court judge only has an effect on the attorney's ability to practice before that specific judge.  Likewise, the WCA's actions in this case were undertaken to control its own proceedings, separate and independent, and separate of the Supreme Court's power to institute disciplinary proceedings against Chavez affecting his status as an attorney.  The actions taken by the WCA in this case do not infringe upon the exclusive power of the Supreme Court to discipline attorneys because the WCA took no action against Chavez's status as an attorney as such.  Instead, its action was directed at protecting and controlling proceedings held before the WCA.  This is consistent with *Ngo*, 2001-NMCA-041, ¶¶ 23-25, *In re Byrnes*, 2002-NMCA-102, ¶ 24, and *In re Jade G.*, 2001-NMCA-058, ¶ 27, as well as with the authority reserved to courts by Rule 17-201.

**{15}**     We have not heretofore addressed whether the WCA, an administrative agency, has inherent authority to control quasi-judicial proceedings held before it.  We conclude the WCA has such authority.  Because the WCA, as created by the Legislature, has

characteristics and qualities similar to courts in fulfilling its functions, we see no reason why its ability to control its own proceedings should differ from a trial judge's ability. *See In re Timofai Sanitation Co.*, 600 A.2d 158, 162-63 (N.J. Super. Ct. App. Div. 1991) (noting that administrative law judges are entitled to sanction attorneys for misconduct before the agency because the administrative agency retains "powers somewhat comparable to those of the judiciary in regard to controlling the conduct of persons who appear before their judges" due to its quasi-judicial and adjudicative functions). Moreover, we see no conflict with the Supreme Court's power in recognizing that the WCA has such power. *See Carrillo v. Compusys, Inc.*, 1997-NMCA-003, ¶ 9, 122 N.M. 720, 930 P.2d 1172 (determining that the WCA is not a part of the judiciary to which the Supreme Court's superintending control over "inferior courts" applies, and the authority of the WCA to appoint pro tem workers' compensation judges "runs parallel to, and does not conflict with, the unchallenged power of our Supreme Court over New Mexico's judiciary").

**{16}**     In one respect, the Stipulated Order goes beyond the boundaries of our case law. Specifically, the Stipulated Order prohibits Chavez from "generating any fees associated with workers' compensation matters[.]" This prohibition is overly broad. Specifically, we fail to see how such a prohibition is necessary for the WCA to control proceedings conducted before it, and it seems more like a sanction which infringes upon Chavez's ability to act as an attorney as such. For example, prohibiting Chavez from merely advising workers of their rights under the Act, without him actually filing pleadings, appearing in, or participating in, any proceedings or hearings in the WCA seems unnecessary to the WCA to control the proceedings conducted before it. To this limited extent, we therefore conclude that the Stipulated Order is over broad and infringes upon the Supreme Court's exclusive jurisdiction.

**{17}**     The district court erred in ruling that by making the Settlement Agreement with Chavez, the WCA infringed upon the exclusive jurisdiction of the Supreme Court to discipline attorneys, except to the extent that it prohibits Chavez from "generating any fees associated with workers' compensation matters[.]"

## 2.     Statutory Authority

**{18}**     The district court also concluded that the WCA does not have statutory authority to suspend attorneys. Thus, the court determined that the WCA exceeded the scope of its statutory authority in promulgating 11.4.3.13(B) NMAC (authorizing the WCA director to suspend, terminate, or limit the right of an attorney to practice before the WCA who engages in or advocates meritless claims or defenses before the WCA). *See Gonazles v. N.M. Educ. Ret. Bd.*, 109 N.M. 592, 595, 788 P.2d 348, 351 (1990) ("An agency may not create a regulation that exceeds its statutory authority."). The district court's reasoning rested on its determination that because the Legislature limited the WCA's power to conduct criminal contempt proceedings, the WCA's authority to suspend an attorney from practicing before the WCA agency is likewise limited.

6

**{19}** The power to control and conduct proceedings in the WCA are set forth in NMSA 1978, Section 52-5-6(B), (C), and (D) (2001), as follows:

> B. *The workers' compensation judge shall have the power* to preserve and enforce order during hearings; administer oaths; issue subpoenas to compel the attendance and testimony of witnesses, the production of books, papers, documents and other evidence or the taking of depositions before a designated individual competent to administer oaths; examine witnesses; *enter noncriminal sanctions for misconduct; and do all things conformable to law which may be necessary to enable him to discharge the duties of his office effectively.*

> C. *In addition to the noncriminal sanctions* that may be ordered by the workers' compensation judge, any person committing any of the following acts in a proceeding before a workers' compensation judge may be held accountable for his conduct in accordance with the provisions of Subsection D of this section:

> > (1) disobedience of or resistance to any lawful order or process;

> > (2) misbehavior during a hearing or so near the place of the hearing as to obstruct it;

> > (3) failure to produce any pertinent book, paper or document after having been ordered to do so;

> > (4) refusal to appear after having been subpoenaed;

> > (5) refusal to take the oath or affirmation as a witness; or

> > (6) refusal to be examined according to law.

> D. The director may certify to the district court of the district in which the acts were committed the facts constituting any of the acts specified in Paragraphs (1) through (6) of Subsection C of this section. The court shall hold a hearing and if the evidence so warrants may punish the offending person in the same manner and to the same extent as for contempt committed before the court, or it may commit the person upon the same conditions as if the doing of the forbidden act had occurred with reference to the process of or in the presence of the court.

(Emphasis added.)

**{20}**     Despite the statutory limitation on the agency's ability to conduct criminal contempt proceedings, Section 52-5-6(B) explicitly grants power to the workers' compensation judge to "enter noncriminal sanctions for misconduct[,] and do all things conformable to law which may be necessary to enable him to discharge the duties of his office effectively." Moreover, the Legislature has empowered the Director to "adopt reasonable rules and regulations . . . for effecting the purposes of the . . . Act." NMSA 1978, § 52-5-4(A) (2003). The purpose of the Act is stated as follows: "[i]t is the intent of the legislature in creating the workers' compensation administration that the laws administered by it to provide a workers' benefit system be interpreted to assure the quick and efficient delivery of indemnity and medical benefits to injured and disabled workers at a reasonable cost to the employers." NMSA 1978, § 52-5-1 (1990). Pursuant to this directive, 11.4.3.13(B) NMAC was adopted, providing that the Director may sanction attorneys for engaging in or advocating meritless claims before the WCA, including the right to enter a sanction involving "suspension, termination or limitation of the right to practice before the WCA." 11.4.3.13(B) NMAC. The regulation is directed at the purpose of the Act in preventing meritless claims from overburdening the WCA, which would delay the "quick and efficient delivery" of benefits, and in preventing unreasonable costs to be expended by employers in defending meritless claims. § 52-5-1. Finally, the Legislature has explicitly granted the Director the authority to impose penalties upon "any person" for violations of the Act. *See* § 52-1-61 ("The director shall impose a penalty on any person who . . . violates any provision of, the Workers' Compensation Act [Chapter 52, Article 1 NMSA 1978] or any rule or regulation adopted pursuant to that act."). *See Lucero v. City of Albuquerque*, 2002-NMCA-034, ¶ 20, 132 N.M. 1, 43 P.3d 352 (stating that while the statutory directive is that while any penalties must be levied by the director, a worker's compensation judge has the inherent authority to enforce the obligations of a party). The adoption of 11.4.3.13(B) NMAC was well within the statutory authority granted to the WCA. *See Tri-State Generation & Transmission Ass'n, v. D'Antonio*, 2011-NMCA-015, ¶ 35, 149 N.M. 394, 249 P.3d 932 ("The authority of an administrative body to enact regulations extends not only to the powers expressly provided by the Legislature, but also to those that can be fairly implied from such powers[.]"), *cert. granted*, 2011-NMCERT-002, 150 N.M. 617, 264 P.3d 129.

**{21}**     For the foregoing reasons, we disagree with the district court that by adopting 11.4.3.13(B) NMAC, the WCA acted in excess of the statutory authority granted to it by the Legislature.

### 3.     Suspension From the Entire WCA

**{22}**     In *Ngo*, we stated that the authority of a court to suspend an attorney is limited to the judge's own courtroom. 2001-NMCA-041, ¶ 25. We reasoned that allowing one judge to suspend an attorney from an entire judicial district would infringe on the inherent authority of other judges to control their own courtrooms. *Id.* Since Chavez was suspended from practicing in the WCA as a whole, the district court found that the Stipulated Order violates *Ngo.* We conclude that *Ngo* is inapplicable.

**{23}**     Here, Chavez entered into a Settlement Agreement in which he agreed that if he violated its terms, the Stipulated Order, suspending him from the WCA, would be filed. The Stipulated Order was signed by the Director of the WCA, acting on behalf of the WCA. *See* NMSA 1978, § 52-5-2(A) (2004) ("The workers' compensation administration shall be in the charge of a director[.]"). Thus, this case is distinguishable from *Ngo* in that the Director was acting within his authority to enforce an agreement made with Chavez on behalf of the WCA as a whole. The concerns expressed in *Ngo* regarding one judge infringing on the inherent authority of another judge are not at issue here. Accordingly, we conclude that this aspect of *Ngo* was not violated.

### 4.      Due Process Concerns

**{24}**     The district court concluded that because Chavez was denied an opportunity to respond to Judge Dal Santo's findings, he was denied due process of law and deprived of his constitutionally protected property interest vested in his professional license to practice law. *See In re Byrnes*, 2002-NMCA-102, ¶ 25 (stating that specific notice of the charges is due when an attorney is suspended by a single district court judge, because it involves the loss of a valuable property right and that notice must include some prior warning that the attorney's actions put the attorney at risk for suspension); *Ngo*, 2001-NMCA-041, ¶ 27 (stating that before suspending an attorney, the court is required to hold a separate hearing to give the attorney an opportunity to defend himself); *see also Mills v. N.M. Bd. of Psychologist Exam'rs*, 1997-NMSC-028, ¶ 15, 123 N.M. 421, 941 P.2d 502 ("The right to practice a profession is a constitutionally protected property interest.").

**{25}**     The Director proposed imposing sanctions upon Chavez, based upon seventeen (17) alleged violations of the WCA and Rules. Chavez had a right to contest the allegations. Instead, Chavez entered into the Settlement Agreement in which he agreed that the Stipulated Order would be filed in the event he did not comply with the Settlement Agreement. The Stipulated Order in turn expressly states that Chavez "does not dispute the allegations" contained in the Director's initial proposal to impose sanctions. Chavez had a right to contest the allegations, and he gave up that right.

**{26}**     As to the claim that Chavez never had a right to contest Judge Dal Santo's findings, the record reflects that Judge Dal Santo informed Chavez of the matters she was investigating, that she gave him an opportunity to dispute those matters, which he did, and that she took his assertions into account in making her reports. In addition, after the Stipulated Order was filed in the WCA, Chavez filed a motion to set it aside. A hearing was held on Chavez's motion, and the Director made a finding that Chavez "failed to present evidence of misrepresentation or fraudulent intent on the part of the WCA." The Director made a further finding that Chavez "failed to present evidence of mistake, inadvertence, surprise or excusable neglect." Significantly, we can find no allegation in the record on appeal that Chavez ever disputed Judge Dal Santo's findings that he violated the terms of the Settlement Agreement.

9

**{27}** In light of the foregoing facts, we hold that Chavez was given all the process he was due. *See D.H. Overmyer Co. v. Frick Co.*, 405 U.S. 174, 185 (1972) ("The due process rights to notice and hearing prior to a civil judgment are subject to waiver."); *State v. Guthrie*, 2011-NMSC-014, ¶ 11, 150 N.M. 84, 257 P.3d 904 ("[D]ue process is flexible and calls for such procedural protections as the particular situation demands and not all situations calling for procedural safeguards call for the same kind of procedure." (emphasis, internal quotation marks, and citation omitted)). In *Overmyer*, the United States Supreme Court expressly ruled that a party properly waived procedural due process protections by signing a contract which provided that a judgment could be entered without notice or a hearing because it was a sophisticated party represented by counsel, and it was not a contract of adhesion. *Id.* at 185-86. Chavez presents us with no facts or authorities distinguishing this reasoning.

**{28}** Thus, we disagree with the district court's conclusion that the Stipulated Order "lacks validity" on the grounds that it was entered without giving Chavez further notice and an opportunity to be heard.

## IV. CONCLUSION

**{29}** The order of the district court reversing the Stipulated Order suspending Chavez from "generating any fees associated with workers' compensation matters" is affirmed, and in all other respects, the order of the district court is reversed. The case is remanded for further proceedings consistent with this Opinion.

**{30} IT IS SO ORDERED.**

 

 

**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

 

**JAMES J. WECHSLER, Judge**

 

**RODERICK T. KENNEDY, Judge**

Topic Index for *Chavez v. NM Workers' Compensation Administration*, Docket No. 30,405

**AL**        **ADMINISTRATIVE LAW AND PROCEDURE**
AL-AA        Administrative Appeal
AL-DU        Due Process
AL-IN        Investigations
AL-JR        Judicial Review
AL-LI        Legislative Intent

AL-RU        Rules
AL-SB        Substantial Compliance
AL-SE        Sufficiency of Evidence

**AE**           **APPEAL AND ERROR**
AE-SR        Standard of Review

**AT**           **ATTORNEYS**
AT-DA        Disciplinary Action
AT-PR        Professional Responsibility

**CP**           **CIVIL PROCEDURE**
CP-DP        Due Process
CP-SE        Settlement Agreement

**CT**           **CONSTITUTIONAL LAW**
CT-DP        Due Process
CT-VO        Vague or Overbroad

**JD**           **JURISDICTION**
JD-SM        Subject Matter
JD-SC        Supreme Court

**WC**           **WORKERS COMPENSATION**
WC-WD        Workers' Compensation Division
WC-RG        Workers' Compensation Regulations
WC-WG        Workers' Compensation, General