840 P.2d 1261

**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**Tom CHERRYHOMES, Defendant–**
**Appellant.**

No. 13479.

Court of Appeals of New Mexico.

Oct. 6, 1992.

Certiorari Denied Nov. 18, 1992.

Tom Udall, Atty. Gen., William McEuen, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Gary C. Mitchell, Ruidoso, for defendant-appellant.

## OPINION

MINZNER, Judge.

Attorney Tom Cherryhomes appeals from a decision of the district court holding him in contempt for failure to comply with a court order. The order, issued on the basis of a local rule, required Cherryhomes to wear a conventional tie when he appeared in Judge Shuler's courtroom. We affirm.

## FACTS

On September 13, 1991, Cherryhomes appeared in Judge Shuler's courtroom to represent a client in a child abuse/neglect proceeding. Cherryhomes was wearing a short-sleeved, conventional dress shirt with the neck unbuttoned. He had a light blue piece of cloth or bandanna tied around his neck, above his collar, and he was not wearing a jacket.

Judge Shuler asked Cherryhomes about his attire, noting that they had previously discussed appropriate dress for his courtroom, as outlined in the local rules for the Fifth Judicial District, which require that male attorneys "wear sport or suit coats, slacks and ties while attending or appearing before the Court, unless some physical reason prevents the wearing of such articles." Rule 1–12(2) (5th Dist. Nov. 1990), N.M.Loc. & Fed.R.Hnbk. (1992). Cherryhomes responded that his arm continued to heal from an injury, which was why he was not wearing a jacket. He also said he was wearing a tie, even if Judge Shuler did not like his choice, and referred to a book on nineteenth century western wear and a dictionary definition of "tie," which he had brought with him. Judge Shuler disagreed with Cherryhomes's interpretation of the meaning of the local rules requirement of a tie, and found Cherryhomes in contempt, fining him $50.

Cherryhomes requested a hearing, and the judge granted his request, scheduling the hearing for later that afternoon, after the pending matter was decided. At the hearing, Cherryhomes requested that Judge Shuler recuse himself because he did not think the judge could be objective. Judge Shuler denied his request, stating that he believed that he could fairly decide

the case. Judge Shuler stated that on two separate occasions earlier in the week he had discussed Cherryhomes's neckwear with him and had asked him not to appear dressed in that manner again. The judge stated that he believed Cherryhomes's attire violated the local rule. He also noted that on the second occasion when Cherryhomes appeared with his bandanna around his neck rather than a conventional tie, he took no action because Cherryhomes claimed he had no notice that he was violating the local rule.

Cherryhomes argued that the issue was a matter of interpretation of the local rule and whether his neckwear satisfied the tie requirement. He again referred to his book on western wear, and argued, on the basis of references in that book, that his bandanna was a necktie. He stated that his choice of neckwear was a matter of personal expression and that he should not be subjected to someone else's interpretation of the local rule.

Judge Shuler noted that he was charged with maintaining proper decorum in his court. Stating that courtroom matters require an element of formality that is reflected in proper courtroom attire, Judge Shuler said that the dress code was enacted to facilitate that end.

After pointing out that he had twice before requested that Cherryhomes not appear in his court wearing the bandanna, Judge Shuler inquired whether Cherryhomes was intentionally trying to provoke a contempt citation. Cherryhomes replied that he was not, but that he could not change himself to meet someone else's taste. Cherryhomes further argued that he had a First Amendment right to dress as he pleased and that the judge's interpretation of appropriate dress was not contained in the local rules. After the hearing, Judge Shuler again found Cherryhomes in contempt, fining him $50.

## DISCUSSION

Cherryhomes contends that the issue before this court is whether his choice of neckwear disrupted the decorum of the court. He contends that his dress caused no disruption, that the judge required him to comply with a unique and personal interpretation of the local rule, and that the judge's ruling infringed his First Amendment right of free expression. We disagree with Cherryhomes's characterization of the issue.

■ Our initial task is to determine whether substantial evidence supports Judge Shuler's determination that Cherryhomes violated a court order. *See State ex rel. Bliss v. Greenwood*, 63 N.M. 156, 315 P.2d 223 (1957) (contempt verdict supported by substantial evidence will not be disturbed on appeal). It is undisputed that the proceeding was one for criminal contempt. Consequently, proof of guilt had to be beyond a reasonable doubt. *Id.* However, in reviewing the evidence, we do so in the light most favorable to the verdict. *State v. Lankford*, 92 N.M. 1, 582 P.2d 378 (1978).

We must first determine whether an order existed that was sufficient to put Cherryhomes on notice of what was required of him. *See Friedman v. District Court*, 611 P.2d 77, 79 (Alaska 1980); *see also Sandstrom v. State*, 309 So.2d 17, 19 (Fla.Dist. Ct.App.1975). The record on appeal supports a conclusion that there was a prior order of which Cherryhomes was aware.

We note that Cherryhomes represented himself throughout most of the appellate proceedings. Mr. Mitchell entered his appearance on Cherryhomes's behalf after briefing was completed and the court had heard oral argument.

Cherryhomes never disputed the existence of an order in either his brief-in-chief or his reply brief. *See* SCRA 1986, 12–213(A)(3) (Repl.Pamp.1992) (findings not specifically attacked in brief shall be deemed conclusive). In oral argument before this court, he admitted that Judge Shuler had ordered him to wear a tie; he contended that Judge Shuler's directive was ambiguous, because Cherryhomes believed that his bandanna *was* a tie.

However, the evidence clearly supports a finding that Cherryhomes was put on notice that he was required to appear in Judge Shuler's courtroom wearing a conventional tie, not a bandanna. There was evidence that Cherryhomes knew that his bandanna was the disputed article of clothing and that Judge Shuler specifically told him not to wear it. Judge Shuler told Cherryhomes that he was required to appear wearing a conventional tie. Furthermore, Cherryhomes presented himself to Judge Shuler wearing the offending bandanna, armed with historical authority which he believed supported his position and prepared to debate what constituted a "tie." Judge Shuler was entitled to conclude from Cherryhomes's actions that he had notice of the previous order and that he understood it.

■ Because we have determined that an order existed, we need not review Cherryhomes's argument that the judge's interpretation of the local rule abridged his First Amendment rights. Cherryhomes was required to abide by the district court's order, even if the order was subject to being set aside later on appeal or by hearing on extraordinary writ. *See United States v. United Mine Workers of America*, 330 U.S. 258, 293–94, 67 S.Ct. 677, 696–97, 91 L.Ed. 884 (1947). "[A]n order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings. This is true without regard even for the constitutionality of the Act under which the order is issued." *Id.* at 293, 67 S.Ct. at 696 (footnote omitted); *see also Walker v. City of Birmingham*, 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967) (petitioners could not disregard temporary injunction on the grounds that it impermissibly interfered with the exercise of First Amendment rights). This principle is sometimes characterized as the "collateral bar rule." *See generally* Richard E. Labunski, *The "Collateral Bar" Rule and the First Amendment: The Constitutionality of Enforcing Unconstitutional Or-*

*ders,* 37 Am.U.L.Rev. 323 (1988) [hereinafter "Labunski"]. "The collateral bar rule requires that court orders, even those later determined to be unconstitutional, must be complied with until amended or vacated." *Id.* at 327 (footnote omitted). "The collateral bar rule in prior restraint cases differs from the more accepted practice of reversing a conviction for violating a statute that is later declared unconstitutional." *Id.* at 328.

■ Willful violation of a court's order without testing its validity through established processes directly affects a court's ability to discharge its duties. *United States v. Dickinson*, 465 F.2d 496, 510 (5th Cir.1972). Such a direct affront to the power of the court cannot be tolerated. *Territory v. Clancy*, 7 N.M. 580, 37 P. 1108 (1894). Because the evidence indicates that Cherryhomes violated a court order, the district court had the discretion to exercise its inherent power to issue a contempt sanction to preserve its authority and maintain respect for the courts, *State v. Wisniewski*, 103 N.M. 430, 708 P.2d 1031 (1985), and we conclude that no abuse of discretion occurred in this case.

■ Cherryhomes acknowledges that the district court has the authority to maintain order and decorum, but contends that, in the absence of any evidence of a disruptive act, he may express himself through his personal interpretation of the tie requirement. He bases this claim on the First and Fourteenth Amendments to the United States Constitution. We understand his argument to be that Judge Shuler's order was an unconstitutional restraint on his right to free expression. We recognize that exceptions to the general rule of the inviolability of court orders have been recognized in other jurisdictions under limited circumstances. *See, e.g., In re Providence Journal Co.*, 820 F.2d 1342 (1st Cir.1986) (order placing prior restraint on pure speech violated by defendants; court concluded that appellants could attack order collaterally if order was transparently in-

valid, but suggested in dicta that a party should make a good faith effort to have such an order reviewed before violating it), *modified by*, 820 F.2d 1354 (en banc), *cert. granted*, 484 U.S. 814, 108 S.Ct. 65, 98 L.Ed.2d 28 (1987), *cert. dismissed*, 485 U.S. 693, 108 S.Ct. 1502, 99 L.Ed.2d 785 (1988); *Phoenix Newspapers v. Superior Court*, 101 Ariz. 257, 418 P.2d 594 (1966) (en banc) (collateral bar rule not applicable when order involved unconstitutional prior restraint on free speech). *But see United States v. Dickinson* (order placing prior restraint on pure speech violated by newspaper reporters, collateral bar rule applied after court weighed the Sixth Amendment right to a fair trial against First Amendment protections).

However, the circumstances of this case do not lie within any exception to the general rule. First, Cherryhomes's choice of dress resembles conduct rather than pure speech, which lessens the justification required to limit such conduct. *See Richards v. Thurston*, 424 F.2d 1281 (1st Cir.1970); *compare Phoenix Newspapers v. Superior Court with State v. Chavez*, 123 Ariz. 538, 601 P.2d 301 (Ct.App.1979) (collateral bar rule applied in case involving speech and conduct); *see also* Labunski, *supra* at 356–60 (discussing the difference between these two cases). Second, the circumstances under which the order was issued do not implicate the same concerns raised by an attempt, for example, to restrain a newspaper from publishing information that may become less newsworthy during the time it takes to appeal the order. Under those circumstances, a strong case may be made for violating the order before seeking review, because an order lasting only a brief time may effectively prevent publication of news that may have a serious impact on a pressing issue. *In re Providence Journal Co.*, 820 F.2d at 1352–53 (delay caused by appellate review could cause restrained information to lose its value). In the case before us, Cherryhomes has failed to articulate any reason for an immediate need to violate the order which effectively prevented him from taking the time to seek appellate review.

While we are mindful of the absolute power embodied by a court's contempt power and the potential for its abuse, in this instance there is no basis to conclude that Cherryhomes acted properly by violating the order rather than seeking to vacate it or by seeking appellate review. In fact, the record supports a conclusion that the real issue is not the bandanna, but the court's authority to interpret the local rule. We must support the district court's reasonable interpretation of the rule, and Cherryhomes has not persuaded us that the court's interpretation was not reasonable. Under these circumstances, we conclude that the district court's order was an appropriate vindication of its authority, which Cherryhomes should have challenged in a more appropriate way. We therefore do not address Cherryhomes's arguments based on the alleged violation of his First Amendment right to free expression.

Cherryhomes could have asked the district court to vacate its previous order if he believed it to be erroneous, or he could have appealed from it. The fact that the order was oral does not affect Cherryhomes's duty to comply with the order until it was vacated or reversed on appeal. *See State v. Sanders*, 96 N.M. 138, 142, 628 P.2d 1134, 1138 (Ct.App.1981) ("Chargeable with knowledge of the oral order * * * defendant subjected himself to the possibility of contempt proceedings."); *Jamason v. State*, 447 So.2d 892 (Fla.Dist.Ct.App.1983) (oral order from trial court for writ of habeas corpus, disregarded by police, was at most voidable rather than void merely because of its form), *cert. denied*, 469 U.S. 1100, 105 S.Ct. 768, 83 L.Ed.2d 766 (1985). During oral argument, Cherryhomes cited *Peck v. Stone*, 32 A.D.2d 506, 304 N.Y.S.2d 881 (1969), as a good example of the limitation of a trial judge's authority to dictate modes of dress in his courtroom. That case actually supports the state's position on appeal.

In *Peck*, the trial court held a female attorney in contempt for wearing her dress five inches above the knee. The contempt

citation was reversed on appeal because there was no evidence that her dress showed lack of respect for the court or caused any disruption in the court's operation. We note, however, that the petitioner in *Peck* followed the proper procedure to resolve her disagreement with the judge. She did not willfully violate the court's directive, but instead applied to have the judge's order vacated. In the case before us, Cherryhomes failed to take any steps to have the judge's order vacated and chose to force a showdown in open court. *See Sandstrom v. State* (lawyer failed to take his grievance to higher court, as he was trained to do, but instead willfully violated court's order that he appear in court wearing a tie).

Cherryhomes also argues that Judge Shuler should have recused himself because he based his decision on his own personal feelings and interpretations. "[E]xcept in those cases where a judge's impartiality might be reasonably questioned, he must exercise his judicial function." *Gerety v. Demers,* 92 N.M. 396, 400, 589 P.2d 180, 184 (1978). "[W]hether a judge should recuse himself if his [or her] impartiality might reasonably be questioned, 'places disqualification within the conscience of the judge and within his [or her] discretion.'" *Klindera v. Worley Mills, Inc.,* 96 N.M. 743, 746, 634 P.2d 1295, 1298 (Ct.App.1981) (quoting *Martinez v. Carmona,* 95 N.M. 545, 550, 624 P.2d 54, 59 (Ct.App.1980). The supreme court has overruled its holding that in the absence of circumstances necessitating immediate corrective action, a person accused of contempt should be tried before a different judge. *See State v. Stout,* 100 N.M. 472, 475, 672 P.2d 645, 648 (1983) (overruling *Wollen v. State,* 86 N.M. 1, 518 P.2d 960 (1974)). Under *Stout,* a judge may not hear a case if he or she becomes so embroiled in the controversy that he or she is unable to fairly and objectively decide. *Id.; see generally* SCRA 1986, 5–902 (Repl.Pamp.1992) at 164 & 172 ("contempt of court"); *cf. In re Avallone,* 91 N.M. 777,

581 P.2d 870 (1978) (if contempt is for failure to follow court rules, and the judge does not become personally embroiled in the proceedings, the judge need not recuse). However, Cherryhomes has failed to present any evidence that indicates that the judge was unable to fairly and objectively decide the issue before him.

Cherryhomes cannot establish bias merely by pointing to the judge's failure to accept his argument. *See United Nuclear v. General Atomic,* 96 N.M. 155, 249, 629 P.2d 231, 325 (1980) ("Rulings adverse to a party do not necessarily evince a personal bias"); *State v. Vialpando,* 93 N.M. 289, 599 P.2d 1086 (Ct.App.1979) (the trier of fact determines the weight and sufficiency of the evidence, including all reasonable inferences). Moreover, the judge's failure to change his ruling after granting Cherryhomes's request for a hearing does not suggest that he could not fairly hear the case, but only that he was not persuaded by Cherryhomes's argument and evidence. We have reviewed the taped transcript and are persuaded that by granting Cherryhomes's request for an evidentiary hearing, and by his neutral questions and comments, Judge Shuler demonstrated both the desire and the ability to objectively consider the merits of the case. Therefore, his refusal to recuse himself was not an abuse of discretion. *See State v. Hargrove,* 81 N.M. 145, 147, 464 P.2d 564, 566 (Ct.App. 1970). "'[A]n abuse of discretion is an erroneous conclusion and judgment, one that is clearly against the logic and effect of the facts and circumstances * * * *'" *Id.* (quoting Renzo Dee Bowers, *Judicial Discretion of Trial Courts* § 12 (1931)).

## CONCLUSION

We affirm the contempt citation entered against Cherryhomes and the fine imposed by the district court.

IT IS SO ORDERED.

BIVINS and FLORES, JJ., concur.