847 P.2d 314

**James J. PURPURA, Petitioner,**

v.

**Pamala Ann PURPURA, Respondent,**

**and concerning Tom Cherryhomes, Defendant–Appellant.**

No. 13707.

Court of Appeals of New Mexico.

Jan. 4, 1993.

Certiorari Denied Feb. 15, 1993.

Tom Udall, Atty. Gen., William McEuen, Asst. Atty. Gen., Santa Fe, for State of New Mexico.

Gary C. Mitchell, Ruidoso, for defendant-appellant.

## OPINION

FLORES, Judge.

Attorney Tom Cherryhomes (appellant) appeals from an order and an amended order holding him in direct criminal contempt. Appellant makes two claims on appeal: (1) that appellant's actions do not constitute contempt; and (2) that the trial judge should have recused himself from hearing the matter of contempt. We affirm.

Initially, we note that appellant represented himself throughout most of the appellate proceedings. Mr. Gary C. Mitchell entered his appearance on behalf of appellant after briefing was completed.

## I. FACTS

The incidents resulting in the contempt adjudication arose December 6, 1991, during litigation of the rights to a time-share condominium by a divorced couple in which appellant represented Pamala Ann Purpura, the respondent. While the trial judge was announcing his decision, appellant interrupted and stated that he would like the record to reflect that he had just been told by Dr. Purpura, the petitioner, to "kiss his ass." Appellant asked the trial judge to admonish the petitioner and stated that this was the type of action that was going to get Dr. Purpura "a little facial surgery." The trial judge addressed the litigants and their attorneys and stated that there appeared to be "heartfelt animosity" between all the participants in the lawsuit and that

he wanted everyone to behave like adults and to conduct themselves in a professional and reasonable manner. The trial judge further stated that he had previously held people in contempt but that he did not wish to do so here. The trial judge also stated that he did not hear the petitioner make the statement to appellant. A review of the record indicates that appellant then proceeded to interrupt the trial judge repeatedly. The trial judge asked appellant not to interrupt him again. While the trial judge was speaking, appellant proceeded to loosen his tie and unbutton his top collar button. During the proceeding, appellant was wearing a conventional tie, knotted and closed around his neck, as well as a multi-colored bandanna above that tie and around his neck. The trial judge told appellant that the court proceedings were not yet concluded and to "please put his tie on." Appellant responded that he had two ties on and that he had loosened only the conventional tie from around his neck. After further discussion between the trial judge and appellant regarding the tie, the trial judge held appellant in contempt for failure to abide by the proper decorum of the court. *See State v. Cherryhomes*, 114 N.M. 495, 840 P.2d 1261 (Ct.App.1992) (affirming contempt against appellant for refusal to comply with court order regarding proper attire).

Appellant requested a hearing in which to present evidence. Following a brief recess, the contempt hearing was commenced to determine whether the charge of direct criminal contempt was warranted. The trial judge stated that it was his opinion that appellant's dress was inappropriate with his top collar button unbuttoned and his tie loosened. The trial judge then requested that the deputy officers photograph appellant. Appellant refused to be photographed and stated that he would like to have witnesses testify as to what they heard the petitioner state, the manner in which appellant was dressed, and whether such manner was disrespectful in their opinion. Appellant stated that he wanted the opportunity to introduce the testimony of these witnesses without having three

deputies with guns in the courtroom. Appellant then told the judge: "I've never physically accosted you, I think you understand that if I wanted to I'm quick enough, agile enough, and athletic enough, I can get you judge. I can get you before these three get custody of me." The trial judge then ordered appellant to allow the deputy sheriff to take his photograph. Appellant still refused, and as the deputy sheriff took the photograph, appellant attempted to leave the courtroom. The trial judge ordered appellant not to leave the courtroom. Appellant stated that he was refusing to stay in the courtroom. The trial judge then charged appellant with a second charge of direct criminal contempt and ordered that appellant be arrested and placed in the county jail. The record reveals the sounds of a struggle which ensued. As he was attempting to leave the courtroom, appellant pushed one of the deputies.

At the contempt hearing a few hours later, appellant was given the opportunity to call his own witnesses and to explain his actions. Appellant contends that the trial judge should have recused himself from the contempt hearing because (1) he was too personally involved in the matter to adjudicate a fair ruling; and (2) the trial judge was involved in two prior contempt hearings in which appellant was held in contempt. The trial judge refused to recuse himself, stating that he had no personal animosity toward appellant and that the contempt charges were necessary to uphold the court's authority and dignity. The trial judge then held appellant in direct criminal contempt for (1) refusing to dress properly in court; and (2) disrupting court proceedings by attempting to leave the courtroom prior to the conclusion of the hearing.

## II. STANDARD OF REVIEW

The district court has inherent power to sanction for contempt. N.M. Const. art. VI, § 13; *State v. Wisniewski*, 103 N.M. 430, 708 P.2d 1031 (1985). Contumacious words or acts expressed in the presence of the court constitute direct criminal contempt. *Wisniewski*, 103 N.M. at 434, 708 P.2d at 1035. In imposing punishment for criminal contempt, the court must

look at the seriousness of the consequences of the contumacious behavior, the public interest in enforcing termination of defendant's defiance, and the importance of deterring future defiance. *State v. Pothier*, 104 N.M. 363, 721 P.2d 1294 (1986). "Commitments and fines for criminal contempt are imposed for the purpose of vindicating the authority of the court and are punitive in nature and intended as a deterrent to offenses against the public." *International Minerals & Chem. Corp. v. Local 177, United Stone & Allied Prods. Workers*, 74 N.M. 195, 198, 392 P.2d 343, 345 (1964).

Conduct violating a court order in the court's presence constitutes direct criminal contempt. *Roybal v. Martinez*, 92 N.M. 630, 593 P.2d 71 (Ct.App.1979). A trial judge may preserve order and decorum in the court and may punish contempts. *See* NMSA 1978, § 34-1-2 (Repl.Pamp.1990). A trial judge may exercise contempt sanctions to preserve authority and respect for the courts. *See Wisniewski*, 103 N.M. at 434, 708 P.2d at 1035.

Appellant argues that the trial court's order of contempt was based on actions which do not constitute contempt. In reviewing whether the trial court erred in holding appellant in criminal contempt, we determine whether there was sufficient evidence constituting proof beyond a reasonable doubt. *See In re Stout*, 102 N.M. 159, 692 P.2d 545 (Ct.App.1984). However, in reviewing the evidence, we view the evidence in the light most favorable to the verdict. *See State v. Lankford*, 92 N.M. 1, 582 P.2d 378 (1978).

## III. EVIDENCE OF CONTEMPT

On appeal, appellant argues that his conduct did not constitute contempt. First, we address the charge of direct criminal contempt against appellant based on his refusal to obey the trial judge's order to uphold the decorum of the court by unbuttoning his top button and loosening his conventional tie. We then discuss the contempt based on appellant's disrupting the court proceedings.

### A. *The Tie Incident*

█ A review of the record indicates that appellant wore his conventional tie in a customary manner throughout most of the proceedings, however, appellant subsequently undid his collar and loosened his tie during court proceedings. The trial judge directed appellant to fix his tie because the hearing was not yet over. Appellant refused to adhere to the court's direct order and the trial judge found appellant in direct criminal contempt.

We hold that the evidence was sufficient to sustain a finding of criminal contempt beyond a reasonable doubt. There is no question that appellant knew of the trial judge's requirement regarding neckwear. This incident occurred approximately three months following a similar incident where appellant had been held in criminal contempt for wearing a bandanna contrary to the same trial judge's order. *See State v. Cherryhomes*, 114 N.M. at 496–97, 840 P.2d at 1262–63. Here, appellant, up until the time of the confrontation, was wearing a conventional necktie as well as a bandanna. The trial judge apparently did not object to the bandanna since appellant was wearing the conventional necktie. The contempt arose when appellant unloosened his necktie and pulled down his bandanna and refused to obey the trial judge's directive that he fasten his necktie. As we said in *State v. Cherryhomes*, it is inappropriate for an attorney to take on the court even if he feels there is a legitimate basis not to comply with a court order. There are proper avenues available to challenge the efficacy of the dress code. Here, because the evidence demonstrates that appellant violated a court order, the trial judge properly invoked his inherent power to issue a contempt sanction to preserve the authority of the court and maintain its respect and dignity. *See Wisniewski*, 103 N.M. at 434, 708 P.2d at 1035.

### B. *Attempting to Leave Courtroom and Pushing Deputy*

█ Next, we address appellant's second charge of direct criminal contempt for interrupting court proceedings by attempting to leave the courtroom prior to the conclusion of the hearing and pushing a deputy sheriff. A review of the record indicates that appellant attempted to leave the contempt hearing after the trial judge had ordered him not to leave, and subsequently pushed a deputy while attempting to leave.

Appellant testified that he believed the hearing was over when he attempted to leave. However, a review of the record indicates that after appellant announced that he was leaving the courtroom, the trial judge told appellant that he was disrupting the proceedings. Appellant disagreed and the trial judge then advised appellant that he was going to hold appellant in direct criminal contempt. Additionally, appellant's testimony was refuted by two other witnesses in the courtroom. We agree that appellant's behavior involved a blatant disrespect for, and disruption of, court proceedings punishable by criminal contempt. *Cf. id.* Again, the trial judge properly invoked his inherent power to issue a contempt sanction.

## IV. RECUSAL

█ On appeal, appellant also argues that the trial judge should have recused himself from the contempt hearing. Appellant argues that he is entitled to have a fair and impartial tribunal as a trier of fact which is both disinterested, and free from any form of bias or predisposition in the case. We agree that "[a]t a minimum, a fair and impartial tribunal requires that the trier of fact be disinterested and free from any form of bias or predisposition regarding the outcome of the case." *See Reid v. New Mexico Bd. of Examiners in Optometry*, 92 N.M. 414, 416, 589 P.2d 198, 200 (1979). "[F]airness and impartiality may often run counter to natural human reaction, particularly where ... the demeanor of an attorney has been particularly disrespectful or antagonistic ... [n]onetheless, fairness and impartiality ... necessitate that the judge 'be patient, dignified and courteous to ... lawyers ... with whom he deals in his official capacity.' " *State v. Martin*, 101 N.M. 595, 603, 686 P.2d 937, 945 (1984) (citations omitted); *see also* SCRA 1986, 21–300(A)(3) (Repl.1992). In determining whether a fair and impartial tribunal exists, the test, as set forth in

*Reid*, is not whether the tribunal was actually biased or prejudiced, but whether "in the natural course of events, there is an indication of a possible temptation to an average man sitting as a judge to try the case with bias for or against any issue presented to him." *See Reid*, 92 N.M. at 416, 589 P.2d at 200.

In support of his argument, appellant contends that the trial judge was too personally involved to preside over the contempt hearing. Appellant first cites to two cases in which the same trial judge has previously held appellant in criminal contempt or imposed sanctions pursuant to Rule 11 (SCRA 1986, 1–011 (Cum.Supp. 1989)). *See State v. Cherryhomes*, 114 N.M. at 497, 840 P.2d at 1263; *Cherryhomes v. Vogel*, 111 N.M. 229, 804 P.2d 420 (Ct.App.1990). Appellant next submits that the trial judge held a personal dislike toward appellant. In response, the State contends that there was no showing that the trial judge became so provoked or embroiled in the controversy so as to warrant recusal.

■ Pursuant to SCRA 1986, Code of Judicial Conduct, Canon 21–400 (Repl.1992), a judge shall recuse himself or herself in any proceeding in which the judge "has a personal bias or prejudice concerning a party." "[W]hether a judge should recuse himself [or herself] if his [or her] impartiality might reasonably be questioned, 'places disqualification within the conscience of the judge and within his [or her] discretion.'" *Klindera v. Worley Mills, Inc.*, 96 N.M. 743, 746, 634 P.2d 1295, 1298 (Ct.App.1981) (quoting *Martinez v. Carmona*, 95 N.M. 545, 550, 624 P.2d 54, 59 (Ct.App.1980)). However, if a judge becomes so embroiled in the controversy that he or she is unable to make a fair and objective decision, the judge must recuse himself or herself. *State v. Stout*, 100 N.M. 472, 672 P.2d 645 (1983).

■ In this case, the record shows that the trial judge stated that he had no personal animosity toward appellant due to his past dealings with him. The record further indicates that appellant has appeared many times before the trial judge, subsequent to his prior contempt citations, without incident. We believe the record establishes that the trial judge's motivation for holding appellant in contempt was that of preserving order and respect in his courtroom and not that of any personal bias against appellant. We find appellant's arguments that the trial judge was biased based on the trial judge's previous contempt charges and sanctions or dislike toward appellant to be without merit. Bias requiring recusal must arise from a personal, extra-judicial source, not a judicial source. *See State v. Case*, 100 N.M. 714, 676 P.2d 241 (1984); *United Nuclear Corp. v. General Atomic Co.*, 96 N.M. 155, 629 P.2d 231 (1980), *cert. denied*, 451 U.S. 901, 101 S.Ct. 1966, 68 L.Ed.2d 289 (1981). Accordingly, the trial judge did not abuse his discretion in refusing to recuse himself.

■ Finally, within his argument that the trial judge should have recused himself, appellant argues that the trial judge "may not proscribe the form or content of individual expression absent incitement to illegal action, nor may it proscribe ideas." Additionally, appellant argues that "in order to grow with dignity or honor the precious right to free and independent expression is absolutely necessary."

■ In this regard, we interpret appellant's argument to be that the trial court's decision which held him in criminal contempt for failure to comply with its order to follow the decorum of the court interfered with his First Amendment right of freedom of expression. In *State v. Cherryhomes*, this Court affirmed the trial court's decision holding appellant in criminal contempt for failure to comply with the trial court's order to wear a conventional tie when appearing before the judge. In that appeal, as here, appellant attacked the constitutionality of the trial court's ruling based on his First Amendment right of free expression. However, in *State v. Cherryhomes*, this Court refused to address appellant's constitutional argument based on the collateral bar rule. *State v. Cherryhomes*, 114 N.M. at 498, 840 P.2d at 1264. Under the collateral bar rule, a court order, issued by a court with subject matter and personal jurisdiction, must be obeyed until it is reversed, amended, or vacated. *United States v. United Mine Workers of America*, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884

(1947); *see generally* Richard E. Labunski, *The "Collateral Bar" Rule and the First Amendment: The Constitutionality of Enforcing Unconstitutional Orders*, 37 Am.U.L.Rev. 323 (1988). "This is true without regard even for the constitutionality of the Act under which the order is issued." *United Mine Workers*, 330 U.S. at 293, 67 S.Ct. at 696; *see also Walker v. City of Birmingham*, 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967). Deliberate refusal to obey a court's order without testing its validity through established processes directly affects a court's ability to discharge its duties and responsibilities. *United States v. Dickinson*, 465 F.2d 496 (5th Cir.1972).

In *State v. Cherryhomes*, this Court determined that an order existed which was sufficient to place appellant on notice of what was required of him and thus, the trial court properly exercised its discretion in invoking its inherent power to issue a contempt sanction. *State v. Cherryhomes*, 114 N.M. at 498, 840 P.2d at 1264. This Court further stated that appellant should have sought to vacate the trial court's contempt order or sought appellate review, rather than violate the trial court's order. *Id.* at 499, 840 P.2d at 1265.

Applying the same rationale here, appellant had notice that the trial judge found appellant's dress inappropriate. Additionally, appellant failed to fix his tie when ordered to do so by the trial judge. Appellant willfully violated the court's order without first having challenged its constitutionality through established processes. Accordingly, we refuse to address appellant's constitutional argument because he was required to abide by the trial court's order.

## V. CONCLUSION

Based on the foregoing, we affirm appellant's contempt convictions.

IT IS SO ORDERED.

BIVINS and CHAVEZ, JJ., concur.