2002-NMCA-102

54 P.3d 996

**In re Barry J. BYRNES, Attorney–Appellant,**

**Susie Fuentes Misquez, f/k/a Susie Baca, Petitioner,**

v.

**Louie Francis Baca, Respondent.**

**No. 22,443.**

Court of Appeals of New Mexico.

Aug. 8, 2002.

Patricia A. Madrid, Attorney General, Cindy J. Cordova, David K. Thomson, Assistant Attorneys General, Santa Fe, NM, for Appellee.

Barry J. Byrnes, Las Cruces, NM, Pro se Appellant.

## OPINION

PICKARD, Judge.

{1} Attorney Barry Byrnes appeals from two orders issued by Judge Grace Duran. The first order held Byrnes in contempt of court for disruptive behavior during a court hearing. The second suspended Byrnes from practicing in Division VI of the Third Judicial District. Because Byrnes defied two direct orders from Judge Duran while in court and disrupted the court proceeding, we affirm the order of contempt. Nonetheless, because Judge Duran failed to give Byrnes sufficient notice of the charges she was relying on in Byrnes's suspension hearing, we reverse the suspension order. We address additional issues that Byrnes raises in order to clarify the authority of courts to suspend attorneys from practicing before them.

## BACKGROUND

{2} Byrnes, an attorney in Las Cruces, New Mexico, practices in the area of domestic relations. In January 2001, Byrnes was hired to represent Susie Misquez in a custody dispute with her former husband, Louis Baca. The parties appeared before Judge Duran on June 13, 2001, for a hearing to

establish a parenting plan for the couple's two sons. A few days before the hearing, Baca had informed Misquez that he would agree to her proposed parenting plan, which split the custody of the couple's two sons, giving Baca sole legal custody of the couple's older son and Misquez sole legal custody of the younger son. On the morning of the hearing, about 20 minutes before the hearing was scheduled to begin, Baca's attorney, Kenneth Egan, called Byrnes to confirm his client's intention. Egan told Byrnes that he believed Baca would agree to the proposed parenting plan, but said he needed to confer with Baca to confirm. Egan indicated he would call Byrnes back before the hearing. When Byrnes did not hear back from Egan, he and his client hurried to the courthouse to attend the hearing. When the hearing began, Egan indicated that Baca wanted joint custody of both children and would not agree to Misquez's parenting plan.

{3} Byrnes did not take this news well. He complained that "this is very weird and possibly a fraud on me and my client." He alleged that Egan and his client purposely misled him in order to secure a default. Unmoved, Judge Duran asked the parties to go forward with the hearing. During a discussion about the purpose of the hearing, Byrnes commented that "this happens too frequently in this Court." When Judge Duran asked him what he meant, he stated that "we start out with one thing and it gets changed to another." Then, during a discussion about the proper scope of the hearing, the following exchange occurred:

THE COURT: I'm not going to go over testimony that has already been presented to the Court both in July and December—

MR. BYRNES: I don't believe this testimony has ever been presented.

THE COURT: Mr. Byrnes, can you please refrain from interrupting my sentences while I'm speaking?

MR. BYRNES: Yes.

THE COURT: It is very difficult to get a record when that happens.

{4} Egan then called Misquez to the stand. While questioning the witness, Egan objected to an answer that included hearsay. The following exchange occurred:

MR. BYRNES: I think the witness should be allowed to answer instead of being cut off. It's—this hearing is, I believe, improper, and it's being limited, unduly limited, and I don't believe her answers should be cut off.

THE COURT: All right, Mr. Byrnes, if we're going to get through this, I think that you need to state the nature of your objection at—

MR. BYRNES: My—

THE COURT: Just a minute.

MR. BYRNES: My objection is she's allowed to answer the question.

THE COURT: Just a—can you please refrain from interrupting me when I'm speaking? This is the second time I have had to admonish you. If you're going to make an objection, make an objection regarding what has been testified to up to that point, not also adding as an aside whatever criticism you have of the proceeding. We are—

MR. BYRNES: Objection. This constitutes a legal denial of due process.

THE COURT: This is now the third time you've interrupted me, Mr. Byrnes. If I have finished, I'm sure you will know that I have finished because I will stop talking.

{5} Egan then continued questioning Misquez. Byrnes objected several times. Judge Duran overruled some objections, but sustained most of them. The questioning focused on Misquez's insistence that the younger child was afraid to visit his father and would suffer emotional trauma if forced to visit him. Misquez was relying in part on the opinion of a therapist, Amy Kerrigan, who at a hearing in January had recommended that visitation be postponed while both father and son received therapy. During this questioning, the following exchange occurred:

MR. EGAN: Okay, do you have any evidence to show the Court that you didn't show the Court back in the summer of last year? Do you have any new information to present the Court?

MS. MISQUEZ: I am not his therapist. I couldn't say. I mean, you would have to talk to Amy Kerrigan. She is the one who has been seeing him.

MR. EGAN: She is not present here today, is she?

MS. MISQUEZ: No, she is not.

MR. BYRNES: Because of the representation by counsel—

MR. EGAN: At 20 minutes to ten.

MS. MISQUEZ: I didn't even know we had court today.

MR. BYRNES:—this hearing wouldn't be required. That's why.

THE COURT: Just a minute.

MR. BYRNES: That's why, Your Honor.

THE COURT: Counsel—

MR. BYRNES: Saturday is not 20 minutes to ten.

THE COURT: Mr. Byrnes. Mr. Byrnes.

MR BYRNES: That is why I'm saying there has been a denial of due process here, and a fraud on me and my client.

{6} Once Byrnes concluded his fifth objection to the denial of due process and fraud, Judge Duran made the following statement before calling a recess:

THE COURT: All right. I am sick and tired, Mr. Byrnes, of you interrupting the Court. I am also sick and tired of you continuing to badger not only Mr. Egan but other people who are present in this courtroom. I am not going to tolerate any more. I am going to call a recess of this case at this time, and then the two of you will proceed in a gentlemanly fashion. Is that understood? Otherwise, Mr. Byrnes, I will hold you in contempt of court because I am not going to go through this again. Is that clear? Is that clear?

MR. BYRNES: I heard what you said, Judge.

THE COURT: We're in recess.

{7} Despite her statement, which indicated that Byrnes would be held in contempt for any additional interruptions or comments, when Judge Duran returned from recess, she stated for the record that Byrnes's behavior constituted contempt. She stated that Byrnes had continued to interrupt the Court despite warnings that his conduct was impermissible. She also stated that he had inappropriately raised his voice and had been "obstructive, disruptive, and interruptive" of the proceedings. She then found him in direct contempt and fined him $1000, payable by noon the next day.

{8} After making that finding, she then allowed Byrnes to make a statement in his defense. Byrnes explained why he believed his client's due process rights were being violated. He asserted that his behavior was necessary in order to adequately represent his client and see that she received a fair hearing. He pointed out that Judge Duran had sustained several of his objections. He also stated that, contrary to Judge Duran's finding, he did not believe he raised his voice. Judge Duran stated that she disagreed with his interpretation of events, "reaffirmed" her finding of contempt, and ordered Byrnes to pay the $1000. She then adjourned the hearing.

{9} The same day, Byrnes paid the fine, and also filed a notice of appeal. The next day, Judge Duran filed the order of contempt and issued Byrnes an order to show cause why he should not be suspended from practicing in her division. The order was placed in Byrnes's box at the Dona Ana County courthouse. The order contained only the following language:

Notice is hereby given for Barry J. Byrnes to appear before the Honorable Grace B. Duran, District Judge, at the Dona Ana County District Court, 201 W. Picacho Ave., Las Cruces, New Mexico, at 1:30 p.m. on June 25, 2001 to determine if he should be suspended from practicing law in Division VI of the Third Judicial District.

The caption on the order read "In re Barry J. Byrnes." There was no cause of action number on the order, although it had been filed with the court clerk.

{10} According to Byrnes, he did not receive the order until June 20. The next day, he filed a response, raising several "affirmative defenses." Byrnes asserted that Judge Duran did not have jurisdiction to suspend

him because (1) our Supreme Court has exclusive jurisdiction over disciplinary matters, (2) he had filed a notice of appeal for the initial contempt order and for the order to show cause, (3) personal service was required and service in his courthouse box did not constitute valid service, and (4) the court failed to initiate a separate action against him. He also asserted that Judge Duran could not initiate the suspension proceedings because he purged the contempt order when he paid the $1000 fine. Finally, he argued that his right to due process of law was violated because the order to show cause did not list the charges against him.

{11} The suspension hearing was held on June 25, 2001. Because Byrnes appeared without counsel, Judge Duran asked whether he was representing himself. He responded that he had not had time to hire an attorney. Without addressing the issue of representation, Judge Duran then began the hearing. She rejected each of Byrnes's affirmative defenses. She then proceeded to explain her grounds for suspending Byrnes. These findings related not only to Byrnes's conduct on June 13, but also to his conduct in prior cases. They also included an assertion that Byrnes had pushed Egan while the June 13 hearing was in recess. Judge Duran then allowed four attorneys, whom she had invited to attend the hearing, to speak in order to "confirm or dispute" her impressions of Byrnes's behavior. These attorneys, including Egan, had served as opposing counsel against Byrnes. Each attorney spoke without being sworn in as a witness. They described Byrnes's behavior in prior cases. Some of their testimony concerned in-court behavior that would have been witnessed by the judge. Attorney Lloyd Bates, for example, testified that Byrnes was "ugly to witnesses," disregarded the court's rulings, and was "totally out of hand" while in court. The attorneys' testimony also included incidents that the judge did not personally observe, such as faces that Byrnes made to a courtroom audience, and comments he made to opposing counsel after the judge had left the room. Egan also confirmed that Byrnes pushed him away when he attempted to discuss the Misquez case after Judge Duran called the recess. Attorney Shane English described Byrnes's conduct during the case of *Bordelon v. Bordelon.* He indicated that he did not remember what happened during the case, so he listened to the tapes in order to prepare for the hearing.

{12} Judge Duran did not allow Byrnes to speak until after all four of the attorney-witnesses had spoken. In making his statement, Byrnes again raised his due process argument, pointing out that he was not served with a list of charges, did not have enough time to prepare, and had no notice that his conduct in past cases would be in question or that he was accused of shoving Egan. He also pointed out that, unlike English, he had no chance to review the tapes from the *Bordelon* case. Addressing the merits of the allegations against him, he denied the assertions made by each of the attorney-witnesses. He also argued that, with the exception of the Misquez case, there had been no complaints about his behavior in the cases that were being discussed. In addition, he asserted that he "should not be censured for defending [his] client."

{13} After Byrnes completed his statement, Judge Duran suspended him from practicing before her. Her order included the domestic violence and child support divisions of the court. Byrnes filed an appeal from the suspension as well.

## DISCUSSION

### I. Contempt

{14} An attorney may be held in contempt and sanctioned for disobeying a court order. *See State v. Ngo,* 2001–NMCA–041, ¶ 16, 130 N.M. 515, 27 P.3d 1002. When a fine or commitment is imposed for the purpose of vindicating the authority of the court, the contempt is criminal rather than civil. *Purpura v. Purpura,* 115 N.M. 80, 82, 847 P.2d 314, 316 (Ct.App.1993). "Conduct violating a court order in the court's presence constitutes direct criminal contempt." *Id.* "When contempt is direct, the court may punish in a summary proceeding." *Ngo,* 2001–NMCA–041, ¶ 16, 130 N.M. 515, 27 P.3d 1002. However, "except in cases of flagrant contemptuous conduct, before summary punishment for contempt may be imposed and enforced, the record should be clear that: (1)

a specific warning was given by the judge; (2) an opportunity to explain was afforded, and (3) a hearing was held." *In re Klecan,* 93 N.M. 637, 640, 603 P.2d 1094, 1097 (1979).

{15} To decide whether Judge Duran was justified in holding Byrnes in contempt, we must decide (1) whether her prior warnings were clear enough to constitute a specific warning to Byrnes, (2) whether Byrnes's conduct constituted a violation of those warnings, and (3) whether the subsequent warning and proceedings after the recess were error.

### 1. The Warning

{16} In acting summarily, a trial judge deprives the contemnor of due process rights that would otherwise be available, such as the right to counsel and the right to present and confront witnesses. *See In re Oliver,* 333 U.S. 257, 275, 68 S.Ct. 499, 92 L.Ed. 682 (1948). For that reason, the minimal due process requirements of a prior warning and an opportunity to defend must be strictly maintained. Without a clear prior warning, it is improper for a judge to act summarily in issuing a contempt order. *Klecan,* 93 N.M. at 639, 603 P.2d at 1096. Even when a contemnor is an attorney, a clear warning is required. A contrary rule could have a potentially harmful chilling effect, where attorneys become reluctant to press a point in court for fear of being held in contempt. *See Sussman v. Commonwealth,* 374 Mass. 692, 374 N.E.2d 1195, 1199 (1978). "[D]oubts in delineating the line between vigorous advocacy and obstruction are to be resolved in favor of advocacy." *In re Dellinger,* 370 F.Supp. 1304, 1316 (N.D.Ill.1973).

{17} Byrnes argues that he did not defy a specific warning from Judge Duran and therefore could not be held in contempt. Byrnes focuses on the warning Judge Duran issued immediately before calling a recess. He points out that Judge Duran proceeded to hold him in contempt without giving him a chance to abide by that warning. Before issuing that final warning, however, Judge Duran instructed Byrnes three times to stop interrupting her while she was talking. She also told him not to repeat his criticism of the proceedings each time he had an objection.

Judge Duran did not explicitly state that she would hold Byrnes in contempt if he interrupted her again or continued to raise his due process arguments at inappropriate times. It is preferable that a judge, before finding someone in contempt, expressly warn against that possibility. It appears that one court requires such a warning. *See Commonwealth v. Carr,* 38 Mass.App.Ct. 179, 646 N.E.2d 426, 427 (1995) ("As a preliminary matter, the trial judge must warn individuals that they are in danger of being charged with contempt of court before contempt rules may be invoked."). We believe that in some cases, it will be enough that the trial court issued a clear warning that the behavior is prohibited. *See Commonwealth v. Corsetti,* 387 Mass. 1, 438 N.E.2d 805, 810 (1982) (affirming contempt in the absence of an explicit warning when the contemnor "was not taken by surprise"). An attorney in particular should appreciate the proper respect due a trial court and should be aware that in some cases the attorney may be held in contempt for violating a court order without the formality of a specific warning of contempt. In this case, Judge Duran issued two clear instructions to Byrnes to stop interrupting her and stop arguing about the nature of the proceedings. These warnings were sufficient to alert Byrnes to the danger of being held in contempt if he failed to modify his behavior accordingly.

### 2. The Contemptuous Behavior

{18} After those warnings, Byrnes interrupted Egan's examination of Misquez without a specific objection. He continued to talk even while Judge Duran began talking and attempted to regain control of the hearing. Then, he once again complained that his client's due process rights were being violated. These actions were direct violations of the judge's clear instructions. They also went beyond the bounds of acceptable advocacy. "Advocacy that is 'fearless, vigorous, and effective,' does not extend to disruptive conduct in the course of trial and in knowing violation of a clear and specific direction from the trial judge." *See Pounders v. Watson,* 521 U.S. 982, 991, 117 S.Ct. 2359, 138 L.Ed.2d 976 (1997) (per curiam) (quoting

*Sacher v. United States*, 343 U.S. 1, 13, 72 S.Ct. 451, 96 L.Ed. 717 (1952)). Byrnes had already asserted, multiple times, his concerns about the hearing. He had certainly made sufficient argument to preserve any claim of error. *See* Rule 12–216(A) NMRA 2002. "Attorneys may not persist in continuing argument after express orders by the trial judge to cease." *Dellinger*, 370 F.Supp. at 1316. In addition, a competent attorney should be able to make a persuasive argument without interrupting the presiding judge or continuing to speak when the judge begins speaking. We also agree that Byrnes had inappropriately interrupted the proceedings. While he was clearly upset by Egan's question, he made no objection challenging the question's validity. It was inappropriate, then, to address the court at that time, and it was highly inappropriate to initiate a verbal sparring match with Egan.

{19} "[C]ontempt powers of the court should be used cautiously and sparingly." *Case v. State*, 103 N.M. 501, 503, 709 P.2d 670, 672 (1985). Nonetheless, trial courts must be allowed to maintain control over their proceedings. *Id.; see also* Rule 17–201 NMRA 2002. Summary contempt proceedings are appropriate when misconduct occurs in open court, in the presence of the judge, disturbs the court's business, and where immediate punishment is essential to " 'prevent demoralization of the court's authority' before the public." *Pounders*, 521 U.S. at 988, 117 S.Ct. 2359 (quoting *Oliver*, 333 U.S. at 275, 68 S.Ct. 499). "Where misconduct occurs in open court, the affront to the court's dignity is more widely observed, justifying summary vindication." *Pounders*, 521 U.S. at 988, 117 S.Ct. 2359. In this case, Byrnes violated clear directives from the court. It was within the court's discretion to punish those violations.

### 3. The Subsequent Warning and Proceedings

{20} By disrupting the hearing in this manner, Byrnes had committed contempt in open court, and Judge Duran was entitled to act summarily to hold Byrnes in contempt. Judge Duran did not, however, act summarily at that point. Instead, she gave Byrnes another warning, telling him that she would not "tolerate any more," and that he would be held in contempt if he failed to behave in a gentlemanly fashion. Byrnes argues that he could not be held in contempt because he did not ignore that warning. He essentially argues that, once Judge Duran said that he had another chance, she had to give him one. We disagree. It was bad form, perhaps, to give Byrnes a warning, then proceed to hold him in contempt without giving him the chance to heed that warning. It was also bad form to make a finding that Byrnes was in contempt before allowing him an opportunity to respond to her allegations. Nonetheless, we do not agree that these errors in form deprived Judge Duran of her power to punish contempt committed in open court. Even after issuing a warning, Judge Duran had the right, upon reflection, to recognize that Byrnes was not entitled to additional chances and punish his contemptuous behavior. And though she should have reserved judgment until after Byrnes responded to her allegations, Judge Duran did fulfill her obligation to give him a chance to be heard, and therefore the due process requirements for summary proceedings were met. Because Byrnes defied clear warning from Judge Duran and the due process requirements for summary proceedings were met, we affirm the order holding Byrnes in contempt of court.

## II. Suspension

{21} In *Ngo*, 2001–NMCA–041, ¶ 25, 130 N.M. 515, 27 P.3d 1002, we held that trial judges have the authority to suspend attorneys from practicing in their own courtrooms. This case requires us to establish the bounds of that authority.

### 1. Due Process

{22} In order to establish the proper process that is due an attorney who faces suspension by a trial court, we must clarify the nature of the proceedings. Byrnes asserts that a suspension order necessarily incorporates a finding that the attorney is in contempt. If that were the case, the suspension hearing would be criminal in nature, and unless summary procedures were appropri-

ate, the hearing would be governed by the Rules of Criminal Procedure. *See Beverly v. Beverly,* 2000–NMCA–097, ¶ 9, 129 N.M. 719, 13 P.3d 77. In this case, summary procedures would have been inappropriate, because some of the allegations against Byrnes, including the shoving incident and comments made by Byrnes after Judge Duran had left the courtroom, were not personally observed by Judge Duran, and thus were the equivalent of indirect contempt.

{23} We do not, however, agree that a suspension hearing is criminal in nature. When our Supreme Court suspends an attorney from practice, that action is considered disciplinary and remedial, not criminal and punitive. *See In re Nelson,* 79 N.M. 779, 784, 450 P.2d 188, 193 (1969) (per curiam) (stating that disciplinary action taken against attorney was for "the protection of the public, the profession, and the administration of justice, and not the punishment of the person disciplined" (internal quotation marks and citation omitted)). In *Ngo,* the suspended attorney argued that trial courts had no authority to suspend attorneys because our Supreme Court has exclusive authority over disciplinary proceedings under Rule 17–201. *Ngo,* 2001–NMCA–041, ¶ 22, 130 N.M. 515, 27 P.3d 1002. We rejected that argument, holding that a trial judge has the power to suspend an attorney from his or her own courtroom. *Id.* ¶ 25. Just as a Supreme Court suspension is disciplinary in nature, a trial court's suspension is disciplinary in nature. *Ngo* also affirmed the trial court's imposition of a fine as a sanction for a rule violation, even though the court had not held the attorney in contempt. *Id.* ¶ 14. We think this type of sanction is also disciplinary, rather than punitive. We read *Ngo* as recognizing the authority of trial courts, albeit limited, to take disciplinary action against an attorney who appears before them as a means to control the proceedings in their courtrooms.

{24} A trial court's authority to suspend an attorney is more closely aligned with its power to disqualify attorneys from specific cases than its power to punish attorneys for contempt. Only a few jurisdictions grant trial courts the authority to suspend attorneys. *Compare In re Robinson,* 37 N.C.App. 671, 247 S.E.2d 241, 244 (1978) (granting trial courts authority to suspend or disbar attorneys), *with In re General Order of March 15, 1993,* 258 Ill.App.3d 13, 196 Ill.Dec. 128, 629 N.E.2d 673, 675–76 (1994) (holding that trial courts have no inherent authority to suspend attorneys). Many, however, give trial courts the authority to disqualify an attorney upon a finding that disqualification is needed to ensure the parties receive a fair trial. *See, e.g., McCarthy v. Southeastern Pa. Transp. Auth.,* 772 A.2d 987, 991–92 (Pa.Super.Ct.2001). Such an action is not considered punitive in nature; it is rooted in the court's power over the fairness of its proceedings. *See id.; Schuff v. A.T. Klemens & Son,* 303 Mont. 274, 16 P.3d 1002, 1011 (2000) ("A district court's discretion in this regard flows from its inherent authority to control trial administration in the interest of fairness and justice."). Similarly, we think a decision to suspend an attorney must be based on a finding that the attorney has shown so little ability to act in a professional manner that no client the attorney is representing, or no client on the opposing side, can be assured a fair trial.

{25} When an attorney is brought before the disciplinary board, the attorney is entitled to specific notice of the charges. *See* Rule 17–309(B) NMRA 2002. We think similar notice is due when an attorney faces suspension by a single trial judge, because in both situations the attorney is facing the loss of a valuable property right. *See Favaloro v. Comm'n for Lawyer Discipline,* 994 S.W.2d 815, 822 (Tex.Ct.App.1999). In addition, just as a trial court must weigh the interests of the client when disqualifying an attorney from a single case, *see Brown v. Eighth Judicial Dist. Ct.,* 116 Nev. 1200, 14 P.3d 1266, 1269–70 (2000), a trial court must take into consideration the fact that multiple clients will be affected when attorneys are suspended from practicing before the court where their cases are assigned.

{26} Judge Duran issued the order to show cause one day after holding Byrnes in contempt. The order did not specify what charges would be considered in the June 25 hearing. Byrnes had no notice that Judge

Duran would be reviewing his behavior in four specific cases. He had no notice of the witnesses who would testify against him. He had no notice that he was accused of committing battery upon another attorney. This lack of notice violated Byrnes's right to due process.

{27} We think that these proceedings violated Byrnes's right to due process for another reason. As discussed above, before a judge can act summarily to hold an attorney in contempt, the judge must issue a warning advising that the attorney's behavior is impermissible. *See Klecan,* 93 N.M. at 639, 603 P.2d at 1096. We also think that, before a trial judge can proceed to suspend an attorney, there must be some prior warning that the attorney was risking suspension or some pattern of behavior during which the court took progressively harsher actions. In this case, there is no record of such prior warnings or sanctions of any type. During the suspension hearing, Judge Duran brought in attorneys to provide evidence that Byrnes's behavior had consistently fallen below standards of professionalism. There is no evidence before us, however, indicating that she ever admonished him before the Misquez hearing. There is no record of prior contempt citations, censures, or warnings of any kind. In fact, the attorneys testifying at the hearing stated that Judge Duran had been exceedingly patient with Byrnes despite his unprofessional behavior. Based on the record before us, we cannot conclude that Byrnes had adequate notice that his behavior was so far out of line that he risked suspension if such behavior continued.

{28} We conclude that Judge Duran provided insufficient notice of the charges against Byrnes, and insufficient notice that he was at risk for suspension. We therefore reverse the order suspending Byrnes from practicing in Division VI of the Third Judicial District. We address some of the other issues raised by Byrnes to provide guidance in the future.

## 2. Other Issues

### a. Bias

{29} Byrnes also argues that Judge Duran should not have presided over the suspension hearing because she could not act impartially. In contempt cases, the question of whether a judge should recuse himself or herself depends on the nature of the proceeding. A judge should recuse himself or herself from presiding over a non-summary proceeding, if (1) the judge has become so embroiled in the controversy that he or she is unable to make a fair and objective decision, *see Purpura,* 115 N.M. at 84, 847 P.2d at 318, or (2) the contemnor has directed personal insults "of that kind [that] are apt to strike 'at the most vulnerable and human qualities of a judge's temperament' " at the judge and the judge does not see fit to act instantly, *Mayberry v. Pennsylvania,* 400 U.S. 455, 463–64, 466, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971) (quoting *Bloom v. Illinois,* 391 U.S. 194, 202, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968)). On the other hand, if a contempt is committed by a lawyer during trial, and summary procedures are proper, the trial judge ordinarily will not be disqualified even though the contempt invokes disrespect to or criticism of the judge. *See Mayberry,* 400 U.S. at 463, 91 S.Ct. 499; *Scott v. Anderson,* 405 So.2d 228, 237 (Fla.Ct.App. 1981).

{30} We agree that Judge Duran became embroiled in controversy with Byrnes. First, we note that his comments during the June 13 hearing questioned Judge Duran's abilities as a jurist. In addition, Judge Duran issued the order to show cause one day after finding Byrnes in contempt, and then, as previously discussed, proceeded in a manner that infringed upon Byrnes's due process rights. Under these circumstances, it would be difficult to act as an impartial decision maker. *Cf. In re Siemon,* 264 Ga. 641, 449 S.E.2d 832, 833 (1994) ("[T]he extreme punishment imposed by the trial court, and the summary nature and language of the trial court's order reveal that the trial court's reaction was cloaked with 'such a likelihood of bias or an appearance of bias that the judge was unable to hold the balance between vindicating the interests of the court and the interests of the accused.' " (citations omitted)). Judge Duran began the show-cause hearing by making definite findings before hearing any testimony, indicating that

she was not neutral, but instead had a predisposition toward ruling against Byrnes. *See Murray v. Murray*, 128 Wis.2d 458, 383 N.W.2d 904, 906–07 (Wis.Ct.App.1986) (holding that judge who made statements indicating he would rule against accused contemnor was not impartial and could not preside over contempt hearing); *Robinson*, 247 S.E.2d at 245 (reversing suspension where the charges issued against the attorney showed that the trial court had prejudged the matter). In the future, we commend to judges the procedure of setting forth all allegations that may be relied upon in the order to show cause and those allegations should be couched as such, instead of as findings or as fact. *See id.* at 245–46.

{31} We do not agree, however, that the standards for recusal in contempt cases can be applied whole cloth to suspension hearings. As we noted in *Ngo*, one judge cannot infringe on another judge's power to control his or her own courtroom. *Ngo*, 2001–NMCA–041, ¶ 25, 130 N.M. 515, 27 P.3d 1002. It follows that one judge need not leave it to another to decide whether an attorney should be suspended from his or her own courtroom. However, if judges wish to handle matters themselves, they must take special care to utilize proper procedure and they must also take special care not to become personally involved. A judge, of course, may issue the order to show cause and seek a colleague's assistance in hearing and ruling on the matter.

### b. Misconduct in other courts

{32} Byrnes also argues that Judge Duran erred in considering testimony about incidents that occurred before another judge. We note that Byrnes has not provided a sufficient record for us to consider this argument. It was his burden to establish a record showing that Judge Duran did not preside over the cases in question. Nonetheless, because Judge Duran may elect to initiate new suspension proceedings against Byrnes, we clarify that a trial court has no authority to remedy misconduct that occurs in other courts. *See Ngo*, 2001–NMCA–041, ¶ 25, 130 N.M. 515, 27 P.3d 1002 ("[B]ecause each judge has inherent power to control his

or her own courtroom, then it follows that when judges of the same judicial district hold coordinate positions, one judge cannot infringe on another judge's power to control his or her own courtroom."); *cf. In re Sanction of Knott v. State*, 731 So.2d 573, 576 (Miss.1999) ("[T]he jurisdiction of a trial court to punish an attorney extends no further than is necessary to control those practices and proceedings before it."); *In re Marriage of Alush*, 172 Ill.App.3d 646, 122 Ill.Dec. 694, 527 N.E.2d 66, 69 (1988). Further, as we explained in *Ngo*, a trial judge has the authority to suspend an attorney from his or her own courtroom only, and any suspension order should be no broader in scope. *See Ngo*, 2001–NMCA–041, ¶ 25, 130 N.M. 515, 27 P.3d 1002.

### c. Duration of suspension

{33} Byrnes also points out that our prior case law has authorized trial judges to order only temporary suspensions. In *State ex rel. Wood v. Raynolds*, 22 N.M. 1, 158 P. 413 (1916), the Supreme Court affirmed a district judge's decision to suspend an attorney pending the outcome of a disbarment proceeding action against him. *Id.* at 4–5, 158 P. at 414. In *Ngo*, the attorney was ordered to be suspended if he failed to pay a contempt fine. *See Ngo*, 2001–NMCA–041, ¶ 2, 130 N.M. 515, 27 P.3d 1002. The attorney could likely purge the suspension by paying the fine.

{34} Thus, any suspension previously upheld has been temporary in nature. The Supreme Court, in its disciplinary capacity, can suspend an attorney for a definite period of time, *see* Rule 17–206(A)(2) NMRA 2002, or can suspend indefinitely, *see* Rule 17–206(A)(3). With an indefinite suspension, the attorney has the right to apply for reinstatement. *See id.;* Rule 17–214 NMRA 2002. We do not decide in this case whether a trial court has the authority to issue an indefinite suspension or can only suspend an attorney for a set period of time. We do think any court would be well advised to follow a theory of progressive discipline, and not consider indefinite suspension before attempting some lesser, more circumscribed form of suspension. Whatever action the

court takes, however, should be supported by findings of fact establishing that the action is necessary in order to maintain courtroom order and protect the interest of litigants. Judge Duran's finding, that Byrnes's conduct was "disrespectful of the Court, the litigants and counsel," was insufficient to support the conclusion that the apparently permanent suspension, a harsh sanction, was necessary to remedy such conduct.

### d. Service

{35} Byrnes raises numerous other grounds for reversal that we address more summarily. He alleges he was improperly served because the order to show cause was placed in his box at the courthouse. The Third Judicial District provides boxes, upon attorney consent, in which the attorney may receive documents from the court and which documents are considered served as of the date stamped on the pleading. *See* LR 3–208 and Form 2.10, NMRA 2002. This appears, to us, sufficiently similar to the nature of service provided for the initiation of disciplinary proceedings, *see* Rule 17–301(C) NMRA 2002, that a ruling such as Byrnes seeks would not be warranted.

### e. Separate cause of action and cause number

{36} Byrnes alleges that Judge Duran could not proceed without filing a separate cause of action with the court clerk and having the clerk assign a new case number. This argument exalts form over substance. The order to show cause was filed with the clerk, and it was placed in the court's miscellaneous file for domestic matters. As a practical matter, most contempt matters are filed in an underlying case, as opposed to in separate files, and the *Ngo* and *Purpura* cases cited above are mere examples. We see no reason why the order to show cause regarding the suspension could not have been filed in the underlying case, in a miscellaneous case, or given its own case number. This is a matter of administration for the court, at least in the absence of prejudice, and no prejudice whatsoever has been alleged in this case.

### f. Verified pleading

{37} Byrnes also contends that the court could not proceed by order to show cause, and instead had to proceed by affidavit or verified pleading. Since the matters for which Judge Duran proposed to and did suspend Byrnes occurred in the presence of the court, proceeding by order to show cause was appropriate. *See In re Avallone*, 91 N.M. 777, 778, 581 P.2d 870, 871 (1978).

### g. Representation by Attorney General

{38} Byrnes alleges it was inappropriate for the Attorney General's office to represent Judge Duran on appeal. We do not believe that the Attorney General is representing Judge Duran as a party, as much as she is representing the interests of the state on appeal. NMSA 1978, § 8–5–2(A) (1975) requires the Attorney General to prosecute and defend all cases in which the state is a party or interested. *See also State ex rel. Maloney v. Sierra*, 82 N.M. 125, 130, 477 P.2d 301, 306 (1970). With regard to the contempt proceeding, the state is a party, inasmuch as criminal contempt is a criminal proceeding. With regard to the suspension aspect of the case, we believe the Attorney General could properly have viewed it as ancillary to the criminal proceeding or at least a proceeding in which the state is interested.

### h. Divestiture of jurisdiction by filing notice of appeal

{39} We finally note that Byrnes is incorrect in asserting that the trial court had no jurisdiction because he had filed appeals in the underlying cases to this Court, as the action to suspend him was separate from those cases. *See Ngo*, 2001–NMCA–041, ¶ 7, 130 N.M. 515, 27 P.3d 1002. To the extent he purported to file an appeal from the order to show cause, that was manifestly not a final order. An appeal from a manifestly non-final order cannot divest a court of jurisdiction. *See Westridge v. Allstate Ins. Co.*, 118 F.R.D. 617, 619 & n. 1 (W.D.Ark. 1988). " 'Otherwise, a litigant could temporarily deprive a court of jurisdiction at any and every critical juncture.' " *Id.* (quoting

*Hodgson v. Mahoney,* 460 F.2d 326, 328 (1st Cir.1972)). *State v. Garcia,* 99 N.M. 466, 469–70, 659 P.2d 918, 921–22 (Ct.App.1983), is not to the contrary because that case involved an appeal from an order that arguably was final. *See id.* at 471, 659 P.2d at 923.

## CONCLUSION

{40} Byrnes committed direct contempt when he ignored clear warnings and disobeyed direct orders from Judge Duran. We therefore affirm Judge Duran's order holding Byrnes in contempt and fining him $1000. However, because Judge Duran provided insufficient notice of the charges against Byrnes, we reverse her order suspending Byrnes from practicing before Division VI of the Third Judicial District.

{41} **IT IS SO ORDERED.**

WE CONCUR: RICHARD C. BOSSON, Chief Judge, and A. JOSEPH ALARID, Judge.