This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

No. A-1-CA-37063

**DEUTSCHE BANK TRUST COMPANY AMERICAS, AS TRUSTEE FOR RESIDENTIAL ACCREDIT LOANS, INC., MORTGAGE ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2007-QSI,**

Plaintiff,

v.

**SERGIO LOZOYA and ZULMA LOZOYA f/k/a ZULMA RODRIGUEZ,**

Defendants,

_____

**IN RE MCCARTHY & HOLTHUS, LLP, and JADE ROTONDA, ESQ.,**

Attorneys-Appellants.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**C. Shannon Bacon, District Judge**

Holland & Hart LLP
Larry J. Montano
Julia Broggi
Santa Fe, NM

for Appellants

**MEMORANDUM OPINION**

**ATTREP, Judge.**

**{1}** McCarthy & Holthus, LLP (McCarthy), and its attorney, Jade Rotonda, appeal the district court's order imposing sanctions on them. Because we conclude that McCarthy and Rotonda were not afforded adequate notice of all the grounds on which the district court sanctioned them, thereby denying them due process, we reverse.

## BACKGROUND

**{2}** This case involves a mortgage foreclosure action initiated by Plaintiff Deutsche Bank Trust Company Americas, a client of McCarthy and Rotonda.[1] After Plaintiff filed its complaint, the district court issued an order referring the case to the Second Judicial District Court's Foreclosure Settlement Program. Through this program, a settlement facilitator conducts settlement conferences (also referred to as facilitations or mediations) for parties to foreclosure actions.

**{3}** Attendance requirements for these settlement conferences, as set out in the court-issued referral order and a local rule of the district court, gave rise to the sanction proceedings in this case. The referral order directed that "[e]ach attorney of record . . . attend the settlement facilitation in person[] and . . . ensure the attendance of necessary parties who have full and final settlement authority[.]" The order provides that the district court "may hold any party or attorney in contempt for failure to . . . comply with the terms of th[e] order." The local rule, Rule LR2-602 NMRA, separately states that "each party of record," "each counsel of record," and "the person or persons with complete authority to settle the case" shall attend the settlement conference in person. Rule LR2-602(G). The rule continues, "On motion of any party or its own motion, the court shall impose sanctions for failure to attend the settlement conference or have present all necessary parties or their representatives with settlement authority, except on a showing of good cause." *Id.* It was an alleged violation of these in-person attendance requirements at the second of two settlement conferences that triggered the sanction proceedings.[2]

**{4}** The first settlement conference in this case took place on June 1, 2017. Rotonda attended as counsel for Plaintiff. Sally Torres, Plaintiff's agent, also attended; her participation satisfied the in-person attendance requirements for Plaintiff. The matter was not resolved, so those present, including Torres, who resided out of state, "pulled out their calendars" and agreed on Monday, July 10, 2017, as the date to resume the conference.

**{5}** On the Sunday before the second settlement conference, Rotonda learned that Torres would not attend because she was scheduled to be in another state. Rotonda contacted Plaintiff to request that a different agent attend, and Plaintiff arranged to have

---

[1]Deutsche Bank's loan servicer, Ocwen Loan Servicing, Inc., acted on behalf of Deutsche Bank in this action. Because the distinction between Deutsche Bank and Ocwen is irrelevant for purposes of our analysis, we refer to them collectively as "Plaintiff."

[2]McCarthy and Rotonda argue on appeal that the sanction provision in the referral order, which is specifically applicable to this case, should prevail over the sanction provision in the local rule, a rule of general applicability. Because we reverse the sanction order on other grounds, we do not address this claim and instead assume without deciding that both the referral order and local rule are applicable in this case.

one appear by telephone. On Monday morning, Rotonda told the program administrator, Christopher Peck, that Torres would not be participating in the conference. Peck understood from Rotonda that "something had arisen" that prevented Torres from attending. So, apparently in an effort to determine that Torres had in fact arranged to attend the mediation in person, Peck asked Rotonda to provide a copy of Torres's plane ticket. Rotonda agreed. Peck followed up with Rotonda about the plane ticket, but Rotonda never provided the copy, nor did she explain that a plane ticket had in fact never been purchased.

{6}     Although the parties eventually settled the matter, the district court on its own initiative began sanction proceedings against Plaintiff for its in-person absence at the July 10 conference. The district court issued an order to show cause alleging that, "[n]otwithstanding" the referral order, "Plaintiff did not provide in person attendance . . . for the July 10 . . . mediation" and demanding that Plaintiff appear and show cause why the court "should not find Plaintiff [to have] knowingly violated a legitimate [o]rder of th[e c]ourt[.]"

{7}     The first of two show-cause hearings followed. In attendance were Rotonda, Karen Weaver (another attorney from McCarthy), and Peck, among others. The district court judge asked Peck and the settlement facilitator to testify about the July 10 conference. Their testimony focused on Peck's efforts to obtain a copy of Torres's plane ticket and Rotonda's failure to provide one. The judge asked for Rotonda's response. Weaver objected, arguing that the show-cause order was directed at Plaintiff, not its counsel, and hence did not put Rotonda on notice that her conduct was at issue. The judge nevertheless engaged with Rotonda in her capacity as Plaintiff's counsel. Rotonda stated it was her mistake that led to Torres's absence. Rotonda explained that, sometime after the July 10 conference, she discovered she had used the wrong email address to schedule Torres's appearance. Rotonda further explained that, at the time of the July 10 conference, she had not realized her mistake and had made the assumption that an emergency or urgent matter had arisen, preventing Torres's attendance. From this, the judge apparently concluded that Rotonda had been disingenuous in her communications with Peck, stating that "Ms. Rotonda is attempting to explain on behalf of her client what happened. . . . [I]n defending her client, she has illuminated for me that she lied." Weaver attempted to refute this contention and again argued that the show-cause order did not implicate Rotonda. The judge concluded the hearing, announcing that she would issue another order to show cause, this time "directed at everyone," but provided no information about the charges that would be the subject of the next show-cause hearing.

{8}     As promised, the second show-cause order was directed, not just at Plaintiff, but also at McCarthy and Rotonda. Similar to the first show-cause order, the second order alleged that, "[n]otwithstanding" the referral order and the local rule, "Plaintiff did not attend the [July 10] mediation in person as required" and demanded that Plaintiff, McCarthy, and Rotonda appear and show cause why the court "should not find [them to have] knowingly violated a legitimate [o]rder of th[e c]ourt[.]" The order listed no other

charge, but did list several possible sanctions, including referral to the disciplinary board and referral to the district attorney for criminal contempt proceedings.

{9}   McCarthy and Rotonda retained their own counsel, as did Plaintiff. In its written response to the second show-cause order, Plaintiff argued that it should not be sanctioned, given that Plaintiff's in-person absence resulted from McCarthy's deviation from agreed-upon procedures for securing an in-person agent. McCarthy and Rotonda, in their written response, agreed that Plaintiff was not to blame. McCarthy and Rotonda's response focused on their "diligent efforts" to ensure that an agent would attend the settlement conference in person and Rotonda's "reasonabl[e] belie[f,]" held until the eve of the conference, that one would.

{10}   At the second show-cause hearing, Rotonda expressed her remorse. She testified on direct examination that she intended to arrange for an agent's in-person attendance, but the measures she took toward that end were flawed. The district court judge then examined Rotonda, largely on the subject of her communications with Torres and Peck regarding the July 10 conference. At the end of the hearing, the judge ruled that Plaintiff would not be sanctioned but that McCarthy and Rotonda would.

{11}   As set out in its written sanction order, the district court found that McCarthy and Rotonda were to blame for Plaintiff's in-person attendance infraction and that their conduct violated Rule LR2-602(G). Regarding McCarthy, the court further found that the firm (1) "did little" to ensure its attorneys' compliance with Plaintiff's procedures and (2) provided inadequate oversight of Rotonda, which gave rise to Rotonda's "myriad" of mistakes and dishonesty toward the court. The court fined McCarthy $50,000, but held the fine in abeyance until such time as McCarthy violates the in-person attendance requirements again.

{12}   Regarding Rotonda, the district court found that her conduct violated the referral order and the Rules of Professional Conduct, in addition to the local rule. The court further found that Rotonda "engaged in a series of serious misrepresentations to the [c]ourt" while communicating with Peck about the reason for Torres's absence and the existence of a plane ticket. The court fined Rotonda $3,000 and referred the matter to the disciplinary board.

**DISCUSSION**

{13}   McCarthy and Rotonda raise various arguments why the sanctions should not stand. Of relevance to our disposition, they argue that the sanction proceedings violated their due process rights because "the district court did not provide [them] with adequate notice of the bases for potential sanctions; specifically, McCarthy's alleged failure to exercise adequate oversight of Ms. Rotonda, and Ms. Rotonda's alleged lack of candor toward the tribunal." We agree. Because we reverse on this ground, we do not address McCarthy and Rotonda's other claims of error.

**{14}** "Whether [a sanctioned party] was afforded procedural due process is a question of law that we review de novo." *State v. Ngo*, 2001-NMCA-041, ¶ 10, 130 N.M. 515, 27 P.3d 1002. Due process requires that a person subject to a sanction receive, at a minimum, notice of the bases for the threatened sanctions and an opportunity to defend against them. *See In re Byrnes*, 2002-NMCA-102, ¶ 16, 132 N.M. 718, 54 P.3d 996 ("[T]he minimal due process requirements of a prior warning and an opportunity to defend must be strictly maintained."); *see also Papatheofanis v. Allen*, 2009-NMCA-084, ¶ 17, 146 N.M. 840, 215 P.3d 778 ("In cases of indirect civil contempt, due process requires that a party be given notice of the charges."); *Doña Ana Sav. & Loan Ass'n, F.A. v. Mitchell*, 1991-NMCA-054, ¶¶ 13-14, 113 N.M. 576, 829 P.2d 655 (holding that an attorney sanctioned for violating Rule 1-011 NMRA was afforded due process where the district court gave the attorney notice of the essential facts and also an opportunity to be heard). Absent such notice and opportunity, reversal of the ensuing sanction order is warranted. *See Papatheofanis*, 2009-NMCA-084, ¶¶ 6, 19 (reversing an order imposing sanctions for contempt because the sanctioned party's due process right to notice was violated).

**{15}** The particular question we answer in this case is whether the notice McCarthy and Rotonda received was effective in alerting them to the bases on which the district court would ultimately impose sanctions. Considering the discrepancies between, on the one hand, the notice of the charges against McCarthy and Rotonda and, on the other, the grounds for the sanctions, we conclude that the notice was not adequate and, as a result, McCarthy and Rotonda's due process rights were violated. We explain.

**{16}** As for the notice of the charges, the second show-cause order makes apparent that the alleged violation of the in-person attendance requirements, occasioned by Plaintiff's absence at the July 10 conference, was the sole accusation against both McCarthy and Rotonda. There are no other charges or facts listed in the show-cause order—there is no mention of the Rules of Professional Conduct, the associated allegation that Rotonda violated her duty of candor to the tribunal, or McCarthy's purported failure to properly oversee Rotonda.

**{17}** While it is true that the district court judge accused Rotonda just before adjourning the first show-cause hearing of having lied, and included in the second show-cause order the possibility of a referral to the disciplinary board, this does not amount to adequate notice under the circumstances. At the first show-cause hearing, the judge did not elaborate on her accusation that Rotonda lied or indicate that lack of candor would be added as a charge in the sanction proceedings. *See Mitchell*, 1991-NMCA-054, ¶¶ 3-7, 14 (holding that notice was adequate where a judge recited the "essential facts" of a specific charge both in open court and in a subsequent show-cause order). Nor was that message communicated through the ensuing second show-cause order, where, as noted, the sole charge was the violation of the referral order and the essential facts supporting the charge were non-compliance with in-person attendance requirements. *See id.* Similarly absent in the show-cause order was any explanation why disciplinary proceedings might be warranted.

**{18}** McCarthy and Rotonda's limited understanding of the charges against them is borne out in their responses to the second show-cause order. They defended against threatened sanctions and criminal contempt proceedings, both in their written response to the second show-cause order and at the second show-cause hearing, on the ground that they did not intend Plaintiff's in-person absence. *See Papatheofanis*, 2009-NMCA-084, ¶ 18 (observing that the respondent prepared a defense covering dates specified in the show-cause order but had no opportunity to do so for dates not specified). As for the threatened disciplinary action, their written response argued that, since Rotonda "did not knowingly disobey an order of the [c]ourt[,]" discipline was unwarranted. (Emphasis omitted.) This response exposed their unawareness that the theory underlying the threat of discipline was lack of candor. Finally, McCarthy and Rotonda's response makes no mention of attorney oversight, again reflecting their inability to anticipate this unnoticed charge. Without knowing, in time to prepare a defense, the full extent of the sanctionable conduct they were alleged to have engaged in, McCarthy and Rotonda were deprived of an opportunity to deny all parts of the allegations against them. *Cf. Byrnes*, 2002-NMCA-102, ¶¶ 11, 26 (holding that the absence of notice to the sanctioned attorney of the witnesses who would testify against him in a suspension hearing—along with the absence of notice of the specific charges against him—violated his right to due process).

**{19}** In contrast to the notice McCarthy and Rotonda received of the ground for threatened sanctions—i.e., their violation of the in-person attendance requirements—the sanction order lists additional grounds as bases for the sanctions. In particular, it enumerates (1) Rotonda's "series of serious misrepresentations to the [c]ourt" and her violation of the Rules of Professional Conduct and (2) McCarthy's failure to provide "adequate or effective oversight over . . . Rotonda." This shift in the district court's focus—from an attendance infraction to Rotonda's candor and McCarthy's lack of oversight—did not, however, become apparent until the second show-cause hearing was underway.

**{20}** At the second show-cause hearing, the district court examined Rotonda, not about her good faith efforts to ensure Plaintiff's in-person attendance at the July 10 conference, but instead about her failure to be forthcoming with Peck and the settlement facilitator about why Torres was absent from the settlement conference. As part of this examination, the district court introduced its own exhibits in support of its theory that Rotonda violated her duty of candor to the tribunal. The judge also inquired about the training Rotonda received from McCarthy on Plaintiff's procedures for securing an in-person agent. In announcing her ruling, the judge discounted the suggestion that the circumstances of Plaintiff's in-person absence were "what the [c]ourt ha[d] ever been concerned about" and clarified that the court's concern was instead "what happened when Ms. Rotonda communicated with the [c]ourt. She didn't tell the truth." This shift in focus is carried through to the district court's sanction order. As for Rotonda, each of the six factual findings relating to her conduct fleshed out some aspect of what the district court believed to be Rotonda's "serious misrepresentations." As for McCarthy, each of the two findings relating to its conduct concentrated on McCarthy's oversight of its attorneys, including Rotonda.

**{21}** This situation is analogous to that in *Papatheofanis*, where only partial notice of the sanctionable conduct at issue was given the sanctioned party. The district court in *Papatheofanis* sanctioned the ex-wife for violating a court order that assigned separate periods of parental responsibility to her and her ex-husband. 2009-NMCA-084, ¶¶ 1, 3, 6. In the motion prompting the sanction, the ex-husband alleged that the ex-wife had violated the order on five dates. *Id.* ¶ 3. At the hearing, the ex-husband argued that the ex-wife violated the order, not only on those dates, but also on five other dates. *Id.* ¶ 6. The district court orally ruled that the ex-wife violated the order on three dates, none of which were listed in the motion. *Id.* The written order reflected that ruling, but also added another date, one that had been listed in the motion. *Id.* This Court, recognizing that the ex-wife "was not provided with notice of all of the alleged dates of noncompliance prior to the hearing[,]" held that "her due process right to notice was violated" and reversed the order. *Id.* ¶ 19.

**{22}** Likewise here, McCarthy and Rotonda received pre-hearing notice of some, but not all, of the grounds for the sanctions. Although the sanctions were based in part on McCarthy and Rotonda's collective failure to ensure that an agent of Plaintiff attend the July 10 conference in person—a ground for which notice had been given—the sanctions also were based on additional grounds for which no notice was given. Specifically, McCarthy's purported lack of oversight over its attorneys was never communicated to it before the second show-cause hearing. And Rotonda's lack of candor to the court likewise was never communicated to her. Like in *Papatheofanis*, this partial notice violated McCarthy and Rotonda's due process rights to notice and warrants reversal of the sanction order. *See id.*; *cf. Byrnes*, 2002-NMCA-102, ¶¶ 26, 28 (reversing an attorney's suspension from practice after concluding that he was deprived of due process by having been given no notice of the charges leading to the suspension).

**{23}** In sum, the district court deprived McCarthy and Rotonda of notice of all of the grounds on which sanctions were pending against them. The sanctions that ensued, resting in part on grounds not reflected in the order to show cause, amount to a violation of McCarthy and Rotonda's due process rights.

**CONCLUSION**

**{24}** For the foregoing reasons, we reverse the district court's sanction order.

**{25}** **IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

**JULIE J. VARGAS, Judge**

**KRISTINA BOGARDUS, Judge**